(No. 55240.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SCOTT WILLIAMS, Appellee.

*Opinion filed September 17, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield, and J. Michael Fitzsimmons, State's Attorney, of Wheaton (Michael B. Weinstein, Ronald Lee Bell, Herbert Lee Caplan, Jr., and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, Phyllis J. Perko and Martin P. Moltz, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for appellant.

Richard L. Salon, of Chicago, for appellee.

JUSTICE WARD delivered the opinion of the court:

Scott Williams, the defendant, was convicted following a jury trial in the circuit court of Du Page County of delivering less than 30 grams of a substance containing cocaine (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(b)). The defendant conducted his defense *pro se*. Before the trial began, but after a jury had been selected, the defendant requested a continuance in order to obtain counsel. The

trial court noted the long history of continuances already obtained by the defendant and denied the motion. The appellate court reversed the conviction (96 Ill. App. 3d 519), holding that the denial of the motion for a continuance violated the defendant's constitutional right to the assistance of counsel at trial (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, sec. 8). We granted the People's petition for leave to appeal under Rule 315 (73 Ill. 2d R. 315).

It required over a year and a half for this case to proceed from the complaint stage to trial. During that period, the defendant was free on bail. A year at least of that delay was directly attributable to the defendant, and most of the numerous continuances obtained by the defendant related to his obtaining and being represented by counsel.

The complaint against the defendant was filed on August 15, 1978. The attorneys first representing the defendant in this matter, John M. Cutrone and Santo J. Volpe, filed their appearances on the day after the complaint was filed. They obtained leave to withdraw on October 17, 1978, but it appears that Mr. Volpe was retained as counsel for the defendant on a Federal charge. On November 15, 1978, an information superseding the complaint was filed.

The defendant retained another attorney, Albert A. Klest. Mr. Klest filed his appearance on December 18, 1978, on which date the defendant pleaded not guilty. The court set January 30, 1979, for trial. On the day before trial, however, Mr. Klest appeared before the trial judge requesting leave to withdraw. The defendant, who was also in court, informed the court that he had employed a different lawyer, Marvin Glass. On the ground that Mr. Glass was out of State and was unable to be in court on January 30, the defendant requested a continuance. The People did not object to a continuance, but did

declare that they were ready for trial. The court granted a continuance to March 5 and gave Mr. Klest leave to withdraw. An appearance was filed for Mr. Glass's firm on March 5.

The case was then continued by the defense to May 17, 1979, because of defense counsel's heavy court commitments in March and April. On May 17, the defendant requested and obtained a further continuance, saying that the Federal charge against him would soon be disposed of, and that the disposition of it might affect plea negotiations with the People.

On August 13, 1979, after the defendant had pleaded guilty in the U.S. district court, the People informed the circuit court that no plea bargain had been reached and requested that the case be set for trial. Trial was set for September 24, two weeks after the date on which the defendant was scheduled to be sentenced in the Federal court.

Trial in this case appeared to be made unnecessary when the defendant pleaded guilty on September 25, pursuant to a plea agreement. On October 23, however, acting *pro se,* he filed a motion to have the plea of guilty withdrawn and set aside. In the motion he alleged that his counsel "forced" him to accept a plea bargain. The trial court allowed the motion on November 16. At that time, Mr. Glass's firm requested leave to withdraw, stating that the defendant's charges that he was coerced by the attorney to plead guilty made it impossible for the attorneys to defend him properly and effectively. The defendant made no objection to the motion to withdraw, and advised the court that in preparing his motion to withdraw the plea he had consulted another lawyer, though that attorney was unable to be in court at that time. The court allowed counsel's motion to withdraw and set the matter for trial on December 3, 1979.

On December 3, the defendant requested another

continuance. He said that his Federal case had not been disposed of and that the attorney representing him in Federal court was ill. He claimed also that he did not have sufficient time to secure another attorney and prepare for the December 3 trial date. The court remonstrated with the defendant, saying that he intentionally delayed prosecution, and the court held the case on its call for trial on a day-to-day basis, pending the completion of a pending trial. On December 17, 1979, in response to a motion by the People to set a specific trial date, the court set a status hearing for January 2, 1980, and trial to begin on January 7, 1980. On December 17, the court asked the defendant his attorney's name, as no attorney had filed an appearance for him. The defendant replied he had not yet retained a lawyer, though he had discussed the case with an attorney, whom he did not name. He had spoken, he said, with several attorneys. The court instructed him to secure a lawyer by January 2.

On January 2, the defendant advised the court that he had retained an attorney, James Marcus, but that Mr. Marcus was on trial out of State. The court reminded the defendant, "[T]he matter is set for trial January 7th, 1:30. You are going to trial that day."

On January 7, the defendant arrived in court late, claiming that his car had broken down and that a car that had come to pick him up ran out of gasoline. The defendant moved for another continuance on the ground that Mr. Marcus, who had not filed an appearance, was on trial out of State. The People objected vigorously, stating that the prosecution's witnesses were present and the People were ready for trial. Too, the People pointed out to the trial court that the defendant was to surrender in the Federal court and begin serving his Federal sentence on January 17. The defendant asked the court to continue the matter again for no more than

one week. The court set the cause for trial on January 16. The court admonished the defendant:

"THE COURT: We'll start on the 16th at 9:00 a.m., sharp.

You are out on bail.

DEFENDANT WILLIAMS: Yes.

THE COURT: It is my duty to admonish you that [sic] your failure to appear in a timely manner for trial, that we will proceed to trial without your presence, or without the presence of your attorney.

On the 16th at 9:00 a.m. the jurors will be summoned into this courtroom and a voir dire will begin at 9:00 a.m., sharp, whether or not you are present or whether or not your attorney is present.

DEFENDANT WILLIAMS: All right.

THE COURT: The trial will proceed. This is the final continuance."

On January 16, the People answered ready for trial. The defendant approached the bench and said "I'm before the court without an attorney. My attorneys were not— withdrew from the case again, didn't feel they had proper time to reach an agreement with the State or to prepare a case." The attorneys he spoke of were not identified and of course they had not filed an appearance. Although the defendant said he was unable to obtain other counsel, he did not offer the court any description of efforts to obtain representation. The court recited the list of 19 continuances of the case and told the defendant that he would go to trial with or without an attorney. The defendant made no reply. Only after the People and the defendant had selected a jury did the defendant move for a continuance. The People objected to the motion and, as stated, the court denied it.

Among the People's witnesses were three agents of the Northeastern Metropolitan Enforcement Group and a forensic scientist. According to their testimony, one of the agents purchased from the defendant a substance determined by field and laboratory testing to contain cocaine.

During the one-day trial the defendant cross-examined some of the witnesses and argued to the jury. The court assisted him in the examining of witnesses and informed him that he could move for a directed verdict and that he would be "afforded an opportunity to testify if, in fact, the State meets its burden."

The defendant had brought no one to the trial to testify for him, but during the People's case he asked the court's permission to communicate with a proposed witness to contradict an agent's testimony regarding the number of people present at the time of the cocaine sale. The defendant said he would need only to make a telephone call to the witness, who lived but 15 minutes away. The court did not at that time respond to the request, but after the defendant himself had briefly testified, the court told him he could telephone his proposed witness and call her to the stand if she would be able to testify following the conference on instructions. The record shows she did not testify.

After the trial, the defendant did retain counsel for the filing of a post-trial motion, and of course he is represented by counsel on this appeal.

As stated, the appellate court held that the defendant's right to counsel had been violated. The court said there was no knowing and intelligent waiver of counsel pursuant to Rule 401(a) (73 Ill. 2d R. 401(a)), which provides:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is in-

digent, to have counsel appointed for him by the court."

The court concluded:

"Under the facts of this case, the trial court should have informed the defendant that if counsel of his choice did not appear he had a right to secure other counsel of his choosing within a reasonable period of time, or informed him of his right to represent himself at trial and secured a knowing and intelligent waiver of counsel, or, alternatively, upon his continued insistence upon private counsel who did not appear, could have appointed counsel for him unless objected to by the defendant." 96 Ill. App. 3d 519, 524.

We consider that under the circumstances shown by this record the court erred. Whether to grant or to deny a motion for continuance is within the sound discretion of the trial court, and the diligence shown by the movant is to be considered in weighing the exercise of discretion. (Ill. Rev. Stat. 1977, ch. 38, par. 114—4(e).) Discretion was not abused here. Judicial patience need not be infinite. The trial court could quite reasonably conclude that the defendant was seeking to postpone trial. This court said in *People v. Friedman* (1980), 79 Ill. 2d 341, 349:

"Our cases have consistently held that the accused in a criminal case does indeed have the constitutional right to be represented by counsel of his own choosing. It is equally true, however, that this right may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime. (*People v. Solomon* (1962), 24 Ill. 2d 586, 590.)"

The defendant contends, however, that he did not intentionally delay the proceeding. Really, he says, delay was occasioned by continuing plea negotiations with the People, which concerned this case and numerous unrelated State charges. Those negotiations, he says, depended upon the disposition of a pending Federal charge. It was, therefore, to the advantage of all the parties to delay the State prose-

cution until disposition of the Federal case. For that reason, he concludes that he should not be blamed for the delay.

The argument is not supported by the record. There may in fact have been plea negotiations conducted, but only the continuance of May 17, 1979, was for the purpose of ascertaining what effect the disposition of the Federal charge would have on the plea bargaining.

We do not consider that any constitutional problems arose from the trial court's action. In *Ungar v. Sarafite* (1964), 376 U.S. 575, 11 L. Ed. 2d 921, 84 S. Ct. 841, Ungar was found guilty of criminal contempt. He had been served with an order to show cause that set a hearing for a date five days thereafter. He appeared with counsel but was granted two short continuances to allow a different lawyer to appear for him. When the case was called again the new attorney requested a week's continuance because he said he was unfamiliar with the case. The court, considering that Ungar had been provided with sufficient time to appear with a lawyer who would be prepared for a hearing, denied the motion for a continuance. The attorney was then permitted to withdraw. He informed the court that he had agreed to take the case only upon the condition that the defendant could secure a continuance. Ungar, after unsuccessfully arguing for a continuance himself, offered no defense. Before the Supreme Court, Ungar contended that the denial of the continuance deprived him of the right to engage counsel and present a defense.

The Supreme Court, in affirming the conviction, stated:

> "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama* [(1940), 308 U.S. 444, 84 L. Ed. 377, 60 S. Ct. 321]. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable

request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag* [(1954), 348 U.S. 3, 99 L. Ed. 4, 75 S. Ct. 1]. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v. United States* [(1957), 352 U.S. 385, 1 L. Ed. 2d 415, 77 S. Ct. 431]; *Torres v. United States* [(9th Cir. 1959)], 270 F.2d 252; *cf. United States v. Arlen* [(2d Cir. 1958)], 252 F.2d 491." 376 U.S. 575, 589-90, 11 L. Ed. 2d 921, 931, 84 S. Ct. 841, 849-50.

Reviewing the circumstances, the court concluded: "Given the deference necessarily due a state trial judge in regard to the denial or granting of continuances, we cannot say these denials denied Ungar due process of law." (376 U.S. 575, 591, 11 L. Ed. 2d 921, 932, 84 S. Ct. 841, 850.) Here too, the trial court's denial of the request to delay the case further after 19 continuances was certainly not arbitrary and did not violate due process.

It would appear that an important factor in the appellate court's decision to reverse was that the defendant could not be considered to have waived his right to counsel because there was no express waiver by the defendant after being given the admonitions in Rule 401(a), which we have quoted. (96 Ill. App. 3d 519, 523-24.) We deem, however, and there are supporting decisions, that where a defendant who is financially able to engage counsel has been instructed to do so within a certain and reasonable time, but he fails to do so and does not show reasonable cause why he was unable to secure representation, the court may treat such a failure as a waiver of the right to counsel and require him to proceed with the hearing. Among supporting decisions are: *United States v. Weninger* (10th Cir. 1980), 624 F.2d 163, *cert. denied* (1980), 449 U.S. 1012, 66 L. Ed. 2d 470, 101 S. Ct. 568 (where the defendant requested a lengthy continuance to obtain counsel because he wanted only a lawyer who

shared his political ideals, the trial court, after affording a reasonable time to obtain counsel, could hold the failure to hire an attorney a knowing and intelligent waiver of the right to counsel); *United States v. Fowler* (5th Cir. 1979), 605 F.2d 181, *cert. denied* (1980), 445 U.S. 950, 63 L. Ed. 2d 785, 100 S. Ct. 1599 (the defendant's failure to secure an attorney between his arraignment in March and an October 16 trial date was a waiver of the right to counsel, despite a motion on October 12 for a continuance stating that the attorney engaged could take the case only if the case would be continued); *United States v. Arlen* (2d Cir. 1958), 252 F.2d 491 ((which the court in *Ungar* cited) holding that the defendant, who apparently was not indigent, had waived the right to counsel by failing to hire an attorney after his previous lawyer withdrew because of nonpayment of fee).

Our holding is not inconsistent with the intendment of Rule 401(a). The record shows that the court informed the defendant of the rights set out in the rule. At the time the defendant entered his plea of guilty the court informed him of the nature of the charge and its minimum and maximum penalties. The court also informed him that, if he could not afford an attorney's services, one would be appointed to assist him in regard to any further motions or appeal. The defendant said he understood. After the plea of guilty was vacated, the court repeatedly advised the defendant to retain counsel. The defendant does not contend that he was indigent. He engaged counsel at various times and there was never any indication to the trial court of any financial problems. He never requested the appointment of an attorney. Under those circumstances clearly there was no obligation to appoint counsel.

It was error for the appellate court to reverse on the ground that the defendant's right to counsel was improperly denied. Other issues were presented by the defendant to the appellate court, but the court did not consider them

because of the disposition it made. We are remanding the cause to the appellate court for its consideration of those issues.

For the reasons given, the judgment of the appellate court is vacated and the cause is remanded to the appellate court for consideration of the remaining issues.

*Vacated and remanded,*
*with directions.*