THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT TOBIAS, Defendant-Appellant.
First District (2nd Division) No. 82—2162

Opinion filed June 19, 1984.—Rehearing denied July 12, 1984.

James J. Doherty, Public Defender, of Chicago (Thomas N. Swital and John Lanahan, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Larry J. Crown, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

A jury found defendant guilty of armed robbery, aggravated kidnaping and deviate sexual assault. Based upon his past criminal record, he was adjudged an habitual criminal and sentenced to life imprisonment. Defendant appeals, contending that: (1) evidence of a gun, holster and lineup identification was erroneously admitted at trial; (2) the sentencing statute is unconstitutional; (3) the assistant State's Attorneys' signatures on the sentencing petition were invalid; and, (4) defendant was improperly denied a continuance to prepare for his sentencing hearing.

The victim testified that on the night of March 14, 1981, she was accosted by a man with a gun as she attempted to unlock the front door to her house. At gunpoint, she was led down her front steps, past four other houses, to a dark gangway where she was sexually assaulted and robbed. The streetlights were lit, enabling the victim to

see her attacker.

A Chicago police officer testified that on April 15, 1981, at 1:45 a.m., he and his partner received radio messages to the effect that a stolen vehicle, occupied by three black males, was being pursued by other policemen in the immediate area and later that the auto was abandoned and its occupants were fleeing on foot. As they approached the locale, they observed an abandoned vehicle. The officers drove through the area, known for its high crime rate of stolen vehicles. They observed three black males sitting in a parked car. The occupant in the back seat suspiciously crouched down when they approached. The three men were ordered out of the car. A pat-down search of defendant revealed an empty shoulder holster under his jacket. Using his flashlight, the officer observed a blue steel revolver on the back seat of the car. Defendant was arrested, placed in a lineup, and was identified by the victim as the man who attacked her one month earlier.

At a suppression hearing defendant testified that on April 15, 1981, at 1:45 a.m. he was sitting in the back seat of a parked car talking with two friends in the front seat. The car was not stolen nor in violation of any traffic laws. Police officers ordered him out of the car, proceeded with a pat-down search and discovered he was wearing an empty shoulder holster.

Prior to and at the close of trial, defendant's motions to quash the arrest and suppress the evidence of the shoulder holster and gun were denied. Evidence of the lineup identification, the victim's in-court identification of defendant, the shoulder holster and gun were submitted to the jury. Defendant was found guilty as first noted above.

At the sentencing hearing, after both parties stated they were prepared to proceed, defense counsel stipulated to certified copies of three 1969 convictions for rape, armed robbery and deviate sexual assault, which were not among the convictions in the presentence investigation report. After so stipulating, the State petitioned for a sentence of life imprisonment under the habitual criminal statute. (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1.) Defendant's motion for a continuance, because he had no notice that such a petition would be filed that day, was denied; however, the court recessed for two hours. The State provided defense counsel with a list of witnesses to be called regarding defendant's prior convictions. When the court reconvened, defendant moved that the habitual criminal statute be found unconstitutional, which was denied. The State's petition was read to defendant in open court. Defendant denied the recidivist allegations in the petition and requested a hearing. During the hearing, the circuit court

heard testimony from a witness who identified defendant as the man who robbed and raped her in 1960, giving rise to charges pending against defendant in another action. A police detective testified regarding defendant's prior arrests and convictions in 1969, 1972 and 1973. Over defense objection, the court then received certified copies of defendant's convictions in 1969, March 1973, and July 1973, together totaling convictions for three rapes, three deviate sexual assaults and three armed robberies. The court found defendant to be an habitual criminal and sentenced him to life imprisonment.

## I

■ Defendant maintains that the evidence of the gun, holster and derivative lineup identification should have been suppressed because his arrest was unlawful, absent probable cause. An officer who reasonably believes a suspect to be involved in criminal conduct may stop the suspect and conduct a limited search of the person to protect himself from hidden weapons. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Ellis* (1983), 113 Ill. App. 3d 314, 446 N.E.2d 1282.) The record reveals sufficient facts to support the officer's reasonable belief that defendant was involved in criminal activity, which included evidence that: the officer was radioed that another patrol car was pursuing a stolen vehicle in the vicinity, from which three black males exited and were fleeing on foot; the area was known for its high crime rate of stolen vehicles; he saw the abandoned stolen vehicle; and he observed three black males sitting in a parked car nearby, of whom defendant took off his hat and crouched down in the back seat. Based on these facts, the officer was justified in conducting the protective frisk.

■ The search revealed defendant was wearing an empty shoulder holster, which provided the officer with the basis for further search of the car since the gun could be nearby and still be used against him. (*People v. Tilden* (1974), 26 Ill. App. 3d 447, 451-52, 325 N.E.2d 431.) The gun was in plain view on the back seat. An object in plain view may be lawfully seized without a warrant if viewed, as here, from a place where the officer has a right to be and circumstances known to him at the time give rise to a reasonable belief that the object constitutes evidence of criminality. (*People v. David* (1981), 96 Ill. App. 3d 419, 421, 421 N.E.2d 312.) The arrest was lawful. For the foregoing reasons, defendant's claim that the gun, holster and lineup identifications were improper because obtained as a result of an illegal arrest also fails.

■ Defendant claims that the lineup identification was invalid as

well because of the victim's poor opportunities to observe her assailant. Assuming defendant had not failed to raise this issue in his posttrial motion, and therefore waived it for purposes of review (*People v. Hebein* (1982), 111 Ill. App. 3d 830, 842-43, 444 N.E.2d 782), the identification was based upon adequate evidence and was therefore valid. (*People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1; *People v. Goka* (1983), 119 Ill. App. 3d 1024, 458 N.E.2d 26.) Defendant maintains that the assault and robbery occurred in a dark gangway where the victim would have been unable to see well. There is sufficient record evidence indicating the victim was able to see defendant before reaching the gangway. The victim had ample opportunity to view defendant: she looked at defendant when he first accosted her; the street was well-lit; and she walked at defendant's side, looking at his face, as they proceeded past four houses.

## II

■ Defendant claims the Habitual Criminal Act (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1 *et seq.*) (Act) under which he was sentenced violates both the Illinois and the United States constitutions. In 1969, defendant was convicted of the felonies of rape, armed robbery and deviate sexual assault. In March 1973, defendant was again convicted of rape, armed robbery and deviate sexual assault. And in July 1973, defendant was again convicted of the same three felonies. Each of the aforementioned offenses contain the same elements as those now designated as Class X felonies, thereby fulfilling the initial requirements of the Act. (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1(a).) The current offenses were committed: (a) on March 14, 1981, more than four months after the effective date of the Act; (b) within 20 years of the judgment entered on the first felony convictions in 1969; (c) after the second felony convictions in July 1973; and, (d) the second offense was committed after conviction on the first offense in 1969. This conviction history satisfies the prerequisite statutory standards for application of the Act. Ill. Rev. Stat. 1981, ch. 38, pars. 33B—1(d)(1), (2), (3), (4).

Defendant raises five constitutional arguments, four of which have recently been dealt with by this court in *People v. Withers* (1983), 115 Ill. App. 3d 1077, 450 N.E.2d 1323, *appeal denied* (1983), 96 Ill. 2d 549. In *Withers*, defendant was sentenced to life imprisonment under the Act. He appealed his sentence, claiming the statute was unconstitutional. This court affirmed the sentence, finding the arguments to be without merit. *Withers* is dispositive of defendant's first four arguments. They will be recapped briefly.

■ Defendant first argues that the Act is unconstitutional because it preempts the judicial function of sentencing by mandatorily requiring the circuit court to sentence a defendant to life imprisonment when he meets the statutory requirements, in violation of article II, section 1, of the 1970 Illinois Constitution, which provides in part that "No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, sec. 1.) Our supreme court has again recently held, in *People v. Taylor* (1984), 102 Ill. 2d 201, involving the validity of the natural life sentence imposed by section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)), that the legislature may determine what penalty shall be imposed for commission of a crime unless the challenged penalty is clearly in excess of constitutional limitations. (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542, 416 N.E.2d 259; *People v. Gonzales* (1962), 25 Ill. 2d 235, 240, 184 N.E.2d 833; *People v. Landers* (1927), 329 Ill. 453, 457, 160 N.E. 836; *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1087.) There are no such excesses in the Act. *People v. Withers* (1983), 115 Ill. App. 3d 1077.

■ Second, defendant claims that the Act vests sole discretion in the prosecutor to decide which defendant should be sentenced under the Act in violation of article VI, section 1, of the Illinois Constitution by encroaching upon the judicial function of sentencing. (Ill. Const. 1970, art. VI, sec.1.) He also maintains the Act violates the eighth and fourteenth amendments to the United States Constitution because it fails to provide guidelines for the exercise of this discretion. (U.S. Const., amends. VIII, XIV.) These same issues were raised in *Withers*, where this court recognized that the State's Attorney has always enjoyed wide discretion in choosing which of several charges shall be brought, and to manage criminal litigation. (*People v. Withers* (1983), 115 Ill. App. 3d 1077, 1087-88.) The statute applies to *every person* who meets the criteria and the word "may" in section 33B—2(a) refers to the means by which the prosecutor may bring a prior conviction history to the court's attention. (*People v. Withers* (1983), 115 Ill. App. 3d 1077, 1088; Ill. Rev. Stat. 1981, ch. 38, par. 33B—2(a).) The Act violates neither the Illinois nor the United States constitutions in this regard. *People v. Lewis* (1981), 88 Ill. 2d 129, 147-48, 430 N.E.2d 1346, 1354.

■ The third contention made by defendant is that the Act requires the trial court to impose a life sentence without considering any evidence in mitigation, in violation of the eighth and fourteenth amendments to the Federal constitution. (U.S. Const., amends. VIII, XIV.) Under the Act, the requisite previous adjudications have already

afforded defendant opportunities to present mitigating evidence and sentencing alternatives during which time the circuit court could have exercised discretion in determining appropriate penal dispositions. *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1090; and see *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 79-80, 413 N.E.2d 1269.) Defendant's third contention also fails.

■ In his fourth argument, defendant urges that life sentences are constitutional only when imposed after consideration of factors reflecting on rehabilitative potential. Because the Act requires the imposition of a life sentence without considering the individual's possible restoration to useful citizenship, defendant argues the Act violates due process requirements of article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2), and the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV). Statutes imposing life sentences without the possibility of parole do not violate the Federal constitution. (*Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133; *People v. Taylor* (1984), 102 Ill. 2d 201, 209; *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1088-90.) Nor is the Illinois Constitution violated since the rehabilitative potential of the individual has been previously considered at the two prior adjudications and need not constitutionally be considered again. (*People v. Withers* (1983), 115 Ill. App. 3d 1077, 1090-91; and see *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 80.) There is no merit in defendant's fourth challenge.

The foregoing analyses in *Withers* were recently considered and followed in *People v. Mason* (1983), 119 Ill. App. 3d 516, 456 N.E.2d 864, in which the provisions of section 33B—1 (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1 *et seq.*) were again upheld against constitutional attack.

■ Defendant's fifth and final constitutional claim is that the Act violates due process under the United States and Illinois Constitutions because a defendant is not notified that he is to be sentenced as an habitual criminal until the day of sentencing. (U.S. Const., amends. VIII, XIV; Ill. Const., art. I, sec. 2.) Whether one is an habitual criminal is a decision independent of the determination of guilt of the underlying substantive offense and is an appropriate subject of a separate proceeding. (*Oyler v. Boles* (1962), 368 U.S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501.) Therefore, notice that one is accused of being an habitual criminal is not required before a plea, verdict or finding of guilty has been entered. Ill. Rev. Stat. 1981, ch. 38, par. 33B—2(a); *Oyler v. Boles* (1962), 368 U.S. 448, 452, 7 L. Ed. 2d 446, 450, 82 S. Ct. 501, 503-04.

■ Whether a defendant is entitled to notice of his asserted habitual criminality *after* a plea, verdict or finding of guilty, but *before* the sentencing hearing, however, is a question of first impression. A defendant has no constitutional right to choose between specific sentences even though the right to elect between sentencing schemes may be provided by statute. (*People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554; *People v. Hackett* (1979), 77 Ill. App. 3d 877, 396 N.E.2d 820.) It is primarily the obligation of his counsel to advise a defendant of potential alternative sentences. Where the record establishes, as here, that the alternatives have been discussed with his counsel, absent a contention of inadequacy of counsel or an indication in the record that he misunderstood the consequences of his decision, no error will be ascribed to the failure of the circuit court to inform a defendant of the specific sentences that might be imposed. (*People v. Hackett* (1979), 77 Ill. App. 3d 877; *People v. Romaine* (1979), 79 Ill. App. 3d 1089, 399 N.E.2d 319.) Here, defendant does not contend that his counsel inadequately informed him of sentencing alternatives or that he misunderstood the consequences.

■ Notice of recidivist charges satisfies due process requirements when, after conviction on the substantive offense, but before sentencing, the petition is read to the defendant in open court, which a defendant has an opportunity to answer. (*Oyler v. Boles* (1962), 368 U.S. 448, 453, 7 L. Ed. 2d 446, 450-51, 82 S. Ct. 501, 504.) Thus, a defendant need not be notified prior to the sentencing hearing itself; notice is sufficient if the petition is first read to the defendant at the hearing and he is allowed to reply to the recidivist charges before a sentence is imposed, as was done in the present case.

### III

■ The Act provides that the prosecutor may file a statement, signed by the State's Attorney, setting forth the prior convictions which activate its application. (Ill. Rev. Stat. 1981, ch. 38, par. 33B—2(a).) Defendant claims that because two assistant State's Attorneys signed the petition, rather than the State's Attorney himself, the petition violates the Act. Assistant State's Attorneys possess the power in the same manner and to the same effect as the State's Attorney. (*People v. Audi* (1978), 61 Ill. App. 3d 483, 378 N.E.2d 225, *cert. denied* (1979), 444 U.S. 901, 62 L. Ed. 2d 138, 100 S. Ct. 212; *People v. Holliman* (1974), 22 Ill. App. 3d 95, 316 N.E.2d 812; *People v. Nahas* (1973), 9 Ill. App. 3d 570, 292 N.E.2d 466. See also Ill. Rev. Stat. 1983, ch. 1, par. 1009.) The assistant State's Attorneys here had the authority to sign the petition in this case.

## IV

Defendant's final contention is the circuit court abused its discretion by not granting a continuance to allow the defense to prepare for the hearing on imposition of the life sentence.

A motion for continuance is addressed to the discretion of the trial court and must be considered in the light of the movant's diligence. (Ill. Rev. Stat. 1981, ch. 38, par. 114—4(e).) The circuit court's ruling will not be disturbed on appeal absent an abuse of discretion; such claimed abuse depends upon the particular facts and circumstances of each case. (*People v. Clark* (1956), 9 Ill. 2d 46, 137 N.E.2d 54, *cert. denied* (1957), 352 U.S. 1002, 1 L. Ed. 2d 546, 77 S. Ct. 559; *People v. Williams* (1982), 92 Ill. 2d 109, 440 N.E.2d 843; *People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521.) A defendant challenging the denial of the motion must show that his rights were prejudiced or he was impeded in the preparation of his defense. *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356; *People v. Olbrot* (1982), 106 Ill. App. 3d 367, 435 N.E.2d 1242; *People v. Pruden* (1982), 110 Ill. App. 3d 250, 442 N.E.2d 284.

In the case at bar, 27 days elapsed between the day of judgment and the day of the sentencing hearing, ample time for defendant to be familiarized with alternative sentences that could be imposed upon him. Defendant received a copy of the presentence investigation report, and the defense announced that it was prepared to proceed with the sentencing hearing. The defense stipulated to the 1969 convictions. Not until after he received a copy of the petition for life imprisonment did defendant request a continuance. The court recessed for two hours, providing him with additional preparation time. After reconvening, defendant submitted a motion to declare the Habitual Criminal Act unconstitutional. The motion was denied, and the hearing proceeded with the elicitation of testimony regarding defendant's prior convictions. Defendant participated in this hearing by objecting to the State's first witness—the alleged victim of a case pending against defendant. The court limited this testimony to consideration only if the State failed in its petition for natural life imprisonment under the Act. Defendant chose not to cross-examine this witness. As to the State's other witness, a police detective, defendant raised several objections to the foundation of the testimony and requested the documents upon which the detective relied in testifying. The court, *in camera*, reviewed all these documents and ordered the State to turn them over to defendant for review. The hearing was then adjourned until the following morning at which time defendant cross-examined the detective. These proceedings indicate that defendant was supplied

with all the documents in the State's possession; given an opportunity to cross-examine the State's two witnesses, only one of whom gave testimony applicable to the imposition of the life imprisonment sentence. The court's refusal to grant a continuance did not prejudice defendant's rights at the hearing.

 Recidivist charges can be refuted by raising such issues at the hearing as whether: defendant is the person named in the prior convictions; the previous convictions are of the character contemplated by the statute; and, the required procedure was followed in invoking the statute. (*Oyler v. Boles* (1962), 368 U.S. 448, 453-54, 7 L. Ed. 2d 446, 450-52, 82 S. Ct. 501, 504-05.) No such refutation was forthcoming here. No issue was raised as to whether defendant was the individual named in the previous convictions. Defendant's convictions, *in toto*, were for rape, deviate sexual assault and armed robbery, all of which are Class X felonies, as prescribed by the Act. (Ill. Rev. Stat. 1981, ch. 38, pars. 11—1(c), 11—3(b), 18—2(b).) Finally, the required procedures were followed. There is no suggestion of any further defense evidence that could or would have been adduced in the event of a continuance. (*People v. Pruden* (1982), 110 Ill. App. 3d 250, 442 N.E.2d 284.) The circuit court did not abuse its discretion in denying a further continuance.

Accordingly, there is no reason to disturb defendant's conviction and sentence to life imprisonment under the Habitual Criminal Act. The convictions and sentencing must be affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.