Jimmy **HENDERSON,**
**Plaintiff-Appellee,**

v.

Sophia **LOPEZ, Individually and as Assistant State's Attorney of Cook County, Illinois, Defendant-Appellant.**

No. 85-1514.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1985.

Decided May 5, 1986.

Richard I. Michael, Chicago, Ill., for defendant-appellant.

Randolph T. Kemmer, Asst. State's Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Plaintiff-Appellee filed this suit under 42 U.S.C. § 1983 alleging that he had been unconstitutionally held in the Cook County jail for three days. The district court found that defendant-appellant's position as an Assistant State's Attorney entitled her to qualified immunity for her role in plaintiff-appellee's unwarranted jailing. Finding that defendant-appellant failed to establish that she acted in good faith, the district court awarded plaintiff-appellee $9,000. Defendant-Appellant seeks our review contending that her position as an Assistant State's Attorney entitled her to absolute immunity in the instant case. We reverse.

### Facts

On September 18, 1981, defendant-appellant, Assistant Illinois State's Attorney Lopez, obtained a judgment against plaintiff-appellee, Henderson, in a child support proceeding in the Cook County, Illinois,

Courts. The state judge found Henderson to be in contempt for his failure to pay child support and ordered that he be committed to the Cook County jail for 30 days or until he paid the $2,000 arrearage. Lopez drafted the order of commitment. Henderson paid the $2,000 on September 21, 1981 and received a receipt.

On October 16, 1981, the Cook County Sheriff contacted Henderson and informed him that a contempt mittimus had issued and that he should surrender or face arrest. Henderson surrendered and presented the receipt evidencing his compliance with the contempt order. The sheriff told Lopez that Henderson had surrendered and had presented the receipt. The sheriff took Henderson to Lopez' office where the sheriff sought advice concerning what should be done with Henderson. The sheriff then took Henderson to the Cook County jail where he was held for three days. Lopez prepared and presented the order which released Henderson. Henderson filed this lawsuit.

### Issue

*Whether Lopez was absolutely immune from prosecution.*

In section 1983 actions, public prosecutors, such as state's attorneys, enjoy "a qualified immunity when performing administrative or investigatory duties, but an absolute immunity when performing a quasi-judicial role." *Coleman v. Frantz,* 754 F.2d 719, 728 n. 9 (7th Cir.1985) (citing *Imbler v. Pachtman,* 424 U.S. 409, 424–27, 96 S.Ct. 984, 992–93, 47 L.Ed.2d 128 (1976)). The Tenth Circuit has interpreted *Imbler* to grant only qualified immunity from section 1983 damages to prosecutors when giving advice to police officers. *See Benavidez v. Gunnell,* 722 F.2d 615, 617 (10th Cir.1983). The Tenth Circuit would confine a prosecutor's absolute immunity from section 1983 damages to "his conduct in 'initiating a prosecution and in presenting the State's

---

\* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is   sitting by designation.

case, ....'" *Id.* (quoting *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995). This Circuit, however, gives *Imbler* a broader reading. When determining which type of immunity a government official enjoys, we look to the nature of the function that the official was performing in the particular case. If a government official's function was quasi-judicial, the official enjoys absolute immunity. If the function was administrative or investigatory, the official enjoys only qualified immunity. *See, e.g., Mother Goose Nursery Schools, Inc. v. Sendak,* 770 F.2d 668, 670–75 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986) (Indiana Attorney General enjoys absolute immunity when determining legality of contract).

■ In examining the nature of the government official's function,

[t]hree factors must be considered. First, we examine the historical or commonlaw basis for the immunity in question. *Id.* Second, we examine whether the functions which the official performs subject him to the same obvious risks of entanglement in vexatious litigation as is characteristic of the judicial process. *Id.* [438 U.S.] at 512, 98 S.Ct. at 2913. With this second factor we consider the possibility what losers will bring suit against the decision-makers in an effort to relitigate the underlying conflict and "charg[e] the participants in the first with unconstitutional animus." *Id.* And third, we consider whether the official is subject to checks upon abuses of authority, such as the correction of error on appeal. *Id.*

*Mother Goose Nursery Schools,* 770 F.2d at 671 (citing *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

We have found no cases which discuss the first factor, the historical or commonlaw basis for the immunity enjoyed by a state's attorney when advising state officers. The court in *Mother Goose Nursery Schools* experienced a similar lack of case law when examining the nature of the Indiana Attorney General's function in reviewing contracts to which the state is a party.

The *Mother Goose Nursery Schools* court recognized that "the Indiana Attorney General receives his powers and duties from statutes alone and holds no common law powers." 770 F.2d at 672 (citation omitted). The court concluded that "'any historical analysis must draw its evidence from our constitutional heritage and structure.'" *Id.* (quoting *Nixon v. Fitzgerald,* 457 U.S. 731, 738, 102 S.Ct. 2690, 2695, 73 L.Ed.2d 349 (1982)). The court then compared the Indiana Attorney General's function as contract reviewer to his function as prosecutor and administrator of the criminal laws, a function in which he receives absolute immunity, and found that the similarities between the two functions were "sufficient to make them analogous for immunity purposes." *Id.* at 673.

Applying the *Mother Goose Nursery Schools'* analysis to the instant case, we recognize that an Illinois State's Attorney is an elected official who receives her power from statute. *People ex rel. Hoyne v. Newcomer,* 284 Ill. 315, 120 N.E. 244, 247 (1918); Ill. Const. Art. VI, § 19; Ill.Ann. Stat. ch. 14 (Smith-Hurd 1963 & Supp. 1985). "Assistant state's attorneys possess the power in the same manner and to the same effect as the state's attorney." *People v. Tobias,* 125 Ill.App.3d 234, 80 Ill.Dec. 496, 504, 465 N.E.2d 608, 615 (1984). Comparing the state's attorney's function as advisor to county officers on legal questions, *see* Ill.Rev.Stat. ch. 14, § 5(7) (Smith-Hurd Supp. 1985), to her function as prosecutor and administrator of the criminal laws, we find the following similarities. First, in both functions, the state's attorney has the responsibility to review the facts of a given case and to arrive at an opinion concerning legality. Second, in both functions, the state's attorney must use her legal expertise and practical experience to arrive at her legal opinion. When functioning as a prosecutor, the state's attorney initiates the formal judicial process; however, when functioning as advice giver, the state's attorney has the ultimate decision on legality. Finally, in both functions, the questions of legality considered by the

state's attorney mirror those which are the everyday work of judges and lawyers. *See generally Mother Goose Nursery Schools,* 770 F.2d at 673–74.

In examining the second *Butz* factor, the risk of vexatious litigation, we note that Ill.Rev.Stat. ch. 14 § 5(7) requires a state's attorney to give her opinion on any question of law in which the people of her county might have an interest. By making the state's attorney the chief counsel for her county, Illinois law places upon her the responsibility to answer every legal question which the county and its officers encounter. Such a position presents numerous opportunities for intimidation and harassment through the filing of lawsuits. Without the protection of absolute immunity for the advice which the law requires her to give, the state's attorney's impartiality would be significantly diminished by the fear of vexatious litigation by those who disagree with her opinion. *See Mother Goose Nursery Schools,* 770 F.2d at 674 (citing *Butz,* 438 U.S. at 516, 98 S.Ct. 2915).

Finally, Illinois law subjects the state's attorney's opinion to many checks. The state's attorney must interpret Illinois case law and statutes to arrive at her opinion. A party who disagrees with the action resulting from the state's attorney's opinion may seek a writ of mandamus, Ill.Rev.Stat. ch. 37 § 13 (Smith-Hurd 1973 & Supp. 1985), or declaratory relief, *id.* ch. 110, § 2–701 (Smith-Hurd 1983) in the Illinois courts. Further, a state's attorney always stands amenable to professional discipline by an association of her peers. *Imbler,* 424 U.S. at 429, 96 S.Ct. at 994. *See, e.g.,* Model Code of Professional Responsibility EC 7–5, EC 7–10, DR 7–102 (1980) (permissible behavior for the advocate and advisor). Finally, the county officials who appoint assistant state's attorneys, *see* Ill. Rev.Stat. ch. 53, § 18 (Smith-Hurd 1967), may remove her from office for abusing her position. Those officials, as well as the state's attorney, must answer to the public at the ballot box for incidents which the public will not tolerate.

While we do not approve of the seemingly unwarranted jailing of Henderson, we find that the assistant state's attorney functions in a quasi-judicial role when advising county officials. In that role, the state's attorney must have absolute immunity from section 1983 damage suits to properly carry out her duties. In reaching our decision, we remain mindful of Judge Learned Hand's view of the prosecutor's immunity from actions for malicious prosecution:

> "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Gregoire v. Biddle,* 177 F.2d 579, 581 (CA2 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

*Imbler,* 424 U.S. at 428, 96 S.Ct. at 994.

### Conclusion

The decision of the district court is RE-VERSED.