# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-3714, 09-3923 & 10-1060

CHRISTINE A. OPP,

*Plaintiff-Appellant,*

*v.*

OFFICE OF THE STATE'S ATTORNEY
OF COOK COUNTY, et al.,

*Defendants-Appellees.*

EDWARD J. BARRETT,

*Plaintiff-Appellant,*

*v.*

COOK COUNTY STATE'S ATTORNEY
OFFICE, et al.,

*Defendants-Appellees.*

LEONARD CAHNMANN,

*Plaintiff-Appellant,*

*v.*

RICHARD A. DEVINE, individually and in his
official capacity as STATE'S ATTORNEY OF
COOK COUNTY, ILLINOIS, et al.,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-06120—**Elaine E. Bucklo**, *Judge.*
No. 1:08-cv-06124—**Harry D. Leinenweber**, *Judge.*
No. 1:08-cv-06207—**Ruben Castillo**, *Judge.*

ARGUED SEPTEMBER 21, 2010—DECIDED DECEMBER 29, 2010

Before BAUER, SYKES and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.*  The appellants, former Assistant State's Attorneys to the Cook County State's Attorney, each brought an action claiming unlawful employment termination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"). The district court granted the defendant-appellees' motions to dismiss ruling that the plaintiff-appellants were excluded from the ADEA's coverage because they held policymaking positions as a matter of law. We affirm.

## I.  BACKGROUND

### A.  Christine Opp

Appellant Opp began working for the Cook County State's Attorney's Office as an Assistant State's Attorney in January 1997. Opp's final position during this employment was as the supervisor of the Preliminary

Hearings Courtroom and as the "first chair" for the Sixth District overflow felony courtroom. Opp had consistently received "qualified" or "highly qualified" performance evaluation ratings.

In response to budget reductions in December 2006, Cook County State's Attorney Richard Devine sent out a memorandum informing Assistant State's Attorneys that if personnel cuts became necessary, the cuts would be based on performance evaluations. On February 16, 2007, Opp was informed that her employment was being terminated. The reason given was for "the future needs of the office."

Opp's complaint stated that she was fifty-seven years old at the time of her termination and the oldest employee assigned to the Sixth District. She was also the only employee from that District whose employment was terminated during February 2007. Opp's complaint stated that she was replaced by an individual substantially younger. Opp claimed that she was terminated because of her age.

### B. Edward Barrett

Appellant Barrett was hired as an Assistant State's Attorney in July 1990. Barrett's final position with the State's Attorney's Office was in the Criminal Prosecutions Bureau in the Fourth District. Barrett regularly received "adequate and qualified" evaluations of his job performance.

On February 16, 2007, Barrett was informed that his employment was being terminated. Like Opp, Barrett was told that his termination was due to budget reductions and for "the future needs of the office." Barrett claimed that he was replaced by a new attorney who was younger and that the State's Attorney hired up to seventy new attorneys who were all younger than him, just months after his termination. Barrett was forty-four years old at the time of his termination and likewise contended that his discharge was due to age discrimination.

### C.  Leonard Cahnmann

Appellant Cahnmann began working for the Cook County State's Attorney's Office as an Assistant State's Attorney in September 1998. On March 2, 2007, Cahnmann was terminated for reasons he was told were "due to budgetary constraints." Cahnmann alleged that in reality he was terminated because of his advanced age and that the "budgetary constraints" he was informed of were only pretext. Cahnmann was born on November 7, 1946, making him sixty years old at the time he was terminated.

## II.  DISCUSSION

We review *de novo* the district court's decision to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), accepting the well-pleaded allegations in the complaint as true and drawing all rea-

sonable inferences in favor of the plaintiff. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996) (citing *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996)).

### A. Appointees on the Policymaking Level

The appellants brought their actions pursuant to the ADEA and contend that they are "employees" covered by the scope of that statute. The relevant section of the ADEA that defines the term "employee" reads:

> The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f) (2010).

The ADEA thus excludes from its coverage four types of persons: (1) elected officials; (2) the personal staff of an elected official; (3) appointees on the policymaking level; and (4) "an immediate advisor with respect to the exercise of the constitutional or legal powers of the office." The appellees contend, and the district court held, that the appellants are situated within the third exception as appointees on the policymaking level. We agree that all Assistant State's Attorneys are appointees

on the policymaking level and therefore are not within the coverage of the ADEA.

The appellants argue that Assistant State's Attorneys are not appointees on the policymaking level and are employees covered by the scope of the ADEA. This circuit's case law regarding the interpretation of an appointee on the policymaking level is well-established. An individual is considered an appointee on the policymaking level if "the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996) (quoting *Heideman v. Wirsing*, 7 F.3d 659, 663 (7th Cir. 1993)).

We derived this test from a pair of cases in which the Supreme Court permitted employee dismissals of individuals holding policymaking positions based on political affiliation. *Id.* at 144; *see generally Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976). Drawing from these First Amendment political patronage cases, we articulated that in ADEA cases "the test for determining if someone is an 'employee' . . . is essentially indistinguishable from that applied in the political firing context under the *Elrod/Branti* doctrine." *Americanos*, 74 F.3d at 144 (citing *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993)).

The appellants contend that our use of the political patronage analysis is "outdated and misplaced," a contention with which we strongly disagree. The appellants

urge this court to overrule *Americanos* and follow the approach of some other circuits, an invitation we decline to accept. Whereas this court relies on a single test in determining whether an individual is an appointee on the policymaking level, the Second Circuit, for example, applies differing approaches in First Amendment cases and in ADEA/Title VII cases. *Butler v. New York State Dep't of Law*, 211 F.3d 739, 746-47 (2d Cir. 2000) (applying the *Elrod/Branti* doctrine for a First Amendment analysis and drawing on Title VII statutory language and Congressional intent for a Title VII analysis). We choose, however, not to draw a distinction between how aggrieved individuals are interpreted as policymakers under the First Amendment and under the ADEA.

Appellants next argue that we should focus on an employee's actual job functions and duties rather than the powers inherent in that given position when making a policymaking level determination. The appellants further contend that each held a low-level position as an Assistant State's Attorney, and they were thus not on a policymaking level. To the contrary, we held in *Tomczak v. City of Chicago* that a court is to examine "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office. . . . [W]e emphasize[ ] the functions of the office involved, not the officeholder." *Tomczak v. City of Chicago*, 765 F.2d 633, 640-41 (7th Cir. 1985).

The appellants maintain that we have in other cases required an examination of the individual's actual job duties. The appellants incorrectly apply this infrequent

requirement to their own case. They correctly point out
that in certain very limited situations, an individual's
actual job duties are more relevant to the policymaker
analysis.[1] Nonetheless, we clarified the application of
this standard in our analysis in *Vargas-Harrison v. Racine
Unified School District*. In that case, we made clear that
in many cases the duties and responsibilities of a
particular position are clearly outlined by law; in these
cases, the court may make the determination, as a
matter of law, that a certain position involves policy-
making. *Vargas-Harrison v. Racine Unified Sch. Dist.*,
272 F.3d 964, 972 (7th Cir. 2001) (finding that the plain-
tiff, an elementary school principal, was a policymaker
as a matter of law because school district regulations
clearly provided an undisputed description of her
duties and powers). We thus held that determining the
powers inherent in a given office may be done without
the aid of a finder of fact "when the duties and responsi-
bilities of a particular position are clearly defined by

---

[1] These types of cases include *Soderbeck v. Burnett County*, 752
F.2d 285 (7th Cir. 1985) (finding that it is for the jury to decide
whether the employee is a policymaker based on his actual job
duties only when the aggrieved employee's role is "sufficiently
uncertain." In that case, the court left it to the jury to deter-
mine whether a woman who was characterized as a "clerical
worker" occupied a policymaking position.); *Matlock v. Barns*,
932 F.2d 658 (7th Cir. 1991) (where the court could not grant
summary judgment because there was nothing in the record
describing the plaintiff's duties as a "legal investigator" for
the Law Department for the city of Gary).

law and regulations." *Id.* (citing *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999)).

The duties and powers inherent to State's Attorneys and Assistant State's Attorneys with regard to setting policy are well-defined by Illinois statutes and our own case law. *See* 55 ILCS 5/3-9005. The State's Attorney "has the broad discretion to set whatever policies he or she believes necessary to protect the interests of . . . society." *Livas v. Petka*, 711 F.2d 798, 800 (7th Cir. 1983). In order to carry out the office's duties, as well as set and implement policy, the State's Attorney is empowered to name assistants who "when so appointed shall take the oath of office in the same manner as State's Attorneys and shall be under the supervision of the State's Attorney." 55 ILCS 5/4-2003 (2010). Therefore, with regard to Assistant State's Attorneys, we have held that "[u]nder Illinois law Assistant State's Attorneys are surrogates for the State's Attorney. Assistant State's Attorneys 'possess the power in the same manner and to the same effect as the State's Attorney.'" *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995) (quoting *People v. Tobias*, 125 Ill. App. 3d 234, 242, 80 Ill. Dec. 496, 503, 465 N.E.2d 608, 615 (1984)). Moreover, we have determined that "an Assistant State's Attorney may, in carrying out his or her duties, make some decisions that will actually create policy." *Livas*, 711 F.2d at 801.

The appellants contend that Assistant State's Attorneys merely implement policy actions on behalf of the State's Attorney. We disagree. An Assistant State's Attorney carries out policy on behalf of the government, and in

doing so has "meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." For example, an Assistant State's Attorney's decisions and actions in the courtroom are binding on the government. The State's Attorney grants an Assistant State's Attorney the authority to conduct a case in court, and, from that point, the Assistant State's Attorney acts as the State's Attorney in all respects. The Assistant State's Attorney may choose to prosecute or dismiss a case, with or without the State's Attorney's input and guidance. This alone raises Assistant State's Attorneys to the level of policymakers.

Because the appellants' positions as Assistant State's Attorneys gave them inherent policymaking authority, any arguments about their actual duties are irrelevant, and we need not conduct a factual analysis of the appellants' actual job duties. Because the appellants' roles as Assistant State's Attorneys were clearly defined by statute, we find that the district court's determination as a matter of law of the policymaking status of the appellants' positions was proper.

## B. Appointment

The second line of the appellants' argument involves their appointment as Assistant State's Attorneys. The appellants argue on appeal that they were not appointed by the State's Attorney and thus cannot be considered "appointees" on the policymaking level. The appellants maintain that they were not "named" or "appointed" by the State's Attorney, as they were hired

by the State's Attorney's Office instead, and in any case, they were hired as Assistant State's Attorneys before Richard Devine was elected as the Cook County State's Attorney.

The appellants' argument that they were hired by the State's Attorney's Office and not by the State's Attorney fails on all accounts. Assistant State's Attorneys are appointed by the State's Attorney as a matter of Illinois law. Illinois law states that "Assistant State's Attorneys are to be named by the State's Attorney of the county." 55 ILCS 5/4-2003 (2010). This statutory language gives the State's Attorney exclusive authority to appoint Assistant State's Attorneys. This statute makes plain that Assistant State's Attorneys are appointees.

The appellants further assert that they were hired as Assistant State's Attorneys before Richard Devine—the State's Attorney under whom each was terminated—was elected, and they were thus not "chosen by" Richard Devine. This argument has no merit. Each current Assistant State's Attorney is re-appointed upon the swearing in of each new State's Attorney. The appellants were thus appointed by Richard Devine upon his swearing in.

## III. CONCLUSION

For the reasons set forth above, the appellants are not covered by the scope of the ADEA as a matter of law and the appellants' claims failed to state a claim for relief. We AFFIRM.