**People of the State of Illinois, Plaintiff-Appellee,
v. Wilbur Branscomb, Defendant-Appellant.**

Gen. No. 53,469.

First District, Fourth Division.

November 12, 1969.

Rehearing denied December 10, 1969.

Carl M. Walsh, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Kenneth L. Gillis, Special Assistant State's Attorney, and Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Armed robbery. Ill Rev Stats (1967), c 38, § 18–2.

JUDGMENT

After a bench trial, defendant was found guilty and sentenced to 7 to 12 years in the penitentiary.

POINTS RAISED ON APPEAL

1. Defendant was denied right to counsel when represented by a public defender whom he had not met prior to trial.

2. Defendant was denied his right to trial by jury when a request to revoke his waiver of jury trial was denied.

3. The trial court erred by receiving into evidence records of defendant's prior felony convictions without proof of identity.

4. Defendant was denied the right to compel attendance of newly discovered witnesses in connection with his motion for a new trial.

5. Defendant was denied adequate representation by counsel.

6. Defendant was not proven guilty beyond a reasonable doubt.

EVIDENCE

James Gresham, for the State:

On January 3, 1968, at approximately 2:30 p. m., he was in the bedroom on the second floor of his home at 1717 East 74th Street in Chicago. Also present in the home were Geraldine Marshall, Tina Jones, and two children. He was called to the front door and saw two men (defendant and Van Leonard) who said they had some whiskey for sale. They showed him a box which they then uncovered, but it was empty. When he looked up, defendant was pointing a gun at him.

The two men rushed him downstairs where he and Tina Jones were tied up. Eugene Johnson entered the home right after this. He was also tied up, and Geraldine Marshall was made to sit down and hold her daughter on her lap. Defendant put the gun in a pillow and held it to witness' head, saying he would kill witness if he didn't tell him where the money was. Defendant then removed the pillow and struck witness above the right eye with the gun.

He was taken upstairs to his bedroom where Leonard took several articles, including a shotgun, a rifle, cameras, a television set, a radio, two rings, and a watch, in addition to $168. Later, defendant again searched the bedroom and took more cameras, a jacket, cuff links, and different articles. (He identified a number of these articles as his belongings which had been taken by defendant and Leonard.)

During the search of the upstairs, Roy Armstrong and Aline Johnson came to the front door and they, too, were tied up by defendant and Leonard. Defendant and Leonard then carried the articles to the car. He noticed a third man who came to the back door and asked what was taking so long. They left after about 45 minutes.

The next time he saw his ring was on January 11, with Officer Haley and another officer, at a pawnshop. He saw his jacket at the police station sometime thereafter, and it was being worn by defendant.

The police called him and said they might have a suspect. Johnson viewed the suspect first in another room. He did not hear anything Johnson said, nor did Johnson say anything to him. Witness then saw defendant wearing his coat and "knew who he was right away." He approached defendant and gave him a "crack," but the police stopped him.

Tina Jones, for the State:

She identified defendant in court as the person who had entered the house on the day in question. The rest of her testimony was essentially the same as Gresham's.

Eugene Johnson, for the State:

When he entered the house, defendant tied him up and made him lie on a couch. His testimony as to the incident in question corroborated that of Gresham. He next saw defendant at the police station where he was wearing Gresham's jacket, and he identified defendant as soon as he was brought into the room.

Iretta Rutt, for the State:

She was an appraiser for loans for First State Pawners on January 4, 1968, when two men brought a ring in to be appraised. She identified defendant as one of the men. She appraised the ring and gave the men a $300 loan on it.

Jesse Macklin, for the State:

He saw the camera in evidence on January 13, 1968, when defendant asked for, and witness made, a loan of $30 on it.

John Lyons, Police Officer, for the State:

He arrested defendant on January 15, 1968, at 4:30 p. m. He identified the jacket in evidence as the one defendant was wearing when he was arrested. Defendant had a mustache when arrested, but when he was brought out for the showup, was clean-shaven. Defendant had been alone for part of the time at the station.

John Todd, Police Officer, for the State:

He and Lyons arrested defendant, and his testimony was substantially the same as Lyons'.

Ralph Mitchell, Police Detective, for the State:

On January 15, 1968, he searched and interrogated defendant at the station. He removed a comb, fingernail clipper, and $115.22 from defendant. He first noticed defendant wearing a mustache, but it was gone when defendant was brought out of the lockup.

Fred Haley, Police Detective, for the State:
His testimony corroborated that of Detective Mitchell.

Van Leonard, for the defense:
On January 3, 1968, he and Bob Harris were in a town house at 1717 East 74th Street from which certain items were taken, including a jacket like the one offered in evidence. He gave the jacket to a fellow named Cat-Eye. The other items that were taken were some cameras, a diamond ring, a television set, and shotguns. He and a man named Bob Johnson pawned the diamond ring at a shop downtown. Defendant did not receive any of the proceeds.

Before testifying at the trial, he talked briefly to defendant in the "bullpen," but had never seen him before that day.

Witness had previously been convicted of burglary, robbery, and attempted murder. At the time of this trial he was serving a 10-year sentence for robbery.

Wilbur Branscomb, on his own behalf:
He had never seen James Gresham prior to January 15, 1968, when he was struck by him at the police station, nor had he ever been in the house at 1717 East 74th Street. The jacket he was wearing at the station was purchased from a man named Cat-Eye, whom he had known for 6 or 7 years but whose real name he didn't know. Cat-Eye brought the jacket to his home and he paid $35 for it. Present in the home were his "common-law wife," Maxine, and two kids, Larry, his son, who is 17, and Catrece, aged 2.

While his real name is William L. Branscomb, he had been known under the name of William Lewis and several other names. (Defendant was indicted under the name Wilbur Branscomb.)

OPINION

■ ■ Defendant's first contention is that he was denied right to counsel when represented by a public

defender whom he had not met prior to trial. At his arraignment, defendant requested the appointment of a "bar association attorney." No cause being shown for such appointment, the request was denied, and the Public Defender was appointed. Ill Rev Stats (1967), c 34, § 5604. This is within the authorized discretionary procedure, as codified in Ill Rev Stats (1967), c 38, § 113–3(b), where it is stated in part:

> In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel. . . . if the defendant requests counsel other than the Public Defender, the court *may* appoint as counsel a licensed attorney at law of this State . . . . [Emphasis supplied.]

The chief judge then advised defendant to renew his request of the trial judge. There is no indication in the record that such a request was made, and we, therefore, consider it waived.

██ A related argument by defendant concerns his objections at trial to the particular attorney assigned to him by the Public Defender. Defendant had prepared for trial with one Assistant Public Defender (Gramenos), whereas, at trial, he was represented by another Assistant (Darragh). Upon defendant's objection to this new attorney, the court inquired of Darragh whether he had Gramenos' notes. He replied that they "had conferred as recently as last evening" concerning the case. Previously, the court had informed defendant that Gramenos was an able lawyer and that the court had observed him on several occasions. The court offered to continue the case to give defendant an opportunity to hire a lawyer. Defendant failed to respond to this offer, but continued to insist that Gramenos was the individual appointed to represent him.

At this point, the jury was called in and the court denied defendant's request, then made, for time to retain his own counsel, indicating that the application came too late after the court had called in the jury.

We agree with the court's disposition of this matter. Defendant's attempts to exercise his various procedural options (discussed further under a later point) seem to have been used to delay trial rather than for their avowed purposes. There is nothing to indicate that defendant's counsel failed to provide "effective assistance." On the contrary, review of the record indicates that Darragh conducted a well prepared and thorough defense. We find that defendant was not prejudiced in his representation by the Public Defender, and defendant's argument that he was entitled to select a particular Assistant to represent him, is absurd. We also find that defendant had waived his right to retain private counsel.

As to defendant's second contention—we recognize that "[e]very person accused of an offense shall have the right to a trial by jury unless understandingly waived by defendant in open court" (Ill Rev Stats (1967), c 38, § 103–6), but defendant's contention that this right was denied him in the instant proceedings is untenable. On the first day of trial, defendant's attorney noted that trial was to be by jury and voir dire was begun the following day. Thereafter, the following colloquy transpired:

> THE DEFENDANT: "I would like to waive the jury."
>
> THE COURT: "We have four of them already selected. I believe it's a little late for waiving, isn't it?"
>
> THE DEFENDANT: "Well, your Honor, complications I didn't anticipate came up."
>
> THE COURT: "We already picked four. We only have eight more to go and you seem to—you are

sort of skeptical about the Public Defender. I think the jury are the best people to try your case."

THE DEFENDANT: "I feel it's my right—"

. . . . . .

THE COURT: "Let the record show that the defendant together with his counsel in open court approached the bench and he desires to waive the jury, although we started to select a jury. Under the law the Court advises him he has a right to do so but you must understand when you waive the jury you have no right to anything by a jury. When you waive it it means just that. The case comes before the Court and the Court tries the issues rather than the jury. Do you understand that?"

THE DEFENDANT: "Yes, sir."

THE COURT: "You may sign the waiver and indicate your waiver."

MR. BURNHAM (Ass't State's Attorney): "Do you understand once you waive the jury you have no further alternative to have a jury, then the Court will hear your case and you can't later say you want to have a jury again. Do you understand that?"

THE COURT: "Do you understand that?"

THE DEFENDANT: "I understand what you said, yes."

The court then discharged the jury, but on the following trial day defendant asked to withdraw his waiver. The court denied this request.

■ It is obvious that defendant's right to trial by jury was "understandingly waived." Ill Rev Stats (1967), c 38, § 103–6. See People v. Brownlow, 114 Ill App2d 458, 252 NE2d 685, and People v. Richardson, 32 Ill2d 497, 207 NE2d 453. The only issue before this court is whether defendant can properly revoke an ex-

press waiver after a partially selected jury has been dismissed at his instance. We believe that the constitutional right to trial by jury does not extend this far, and defendant's attempt so to employ it was done solely to impede the administration of justice. If the exercise of this serious and valuable constitutional right were to be permitted in the on-again, off-again manner sought by defendant, it could become impossible ever to complete a trial, with or without a jury. We find that defendant's trial was free from error in this regard.

Defendant also claims that the court erred by receiving into evidence records of defendant's prior felony convictions without proof of identity. After defendant testified on his own behalf, the State offered into evidence certified records of one conviction of "William L. Branscomb" for burglary and three convictions of "William Lewis" for robbery. Over the objection of defendant's attorney, the court admitted the records in evidence "for the sole purpose of impeachment and no other."

■■■ Records of prior convictions are admissible for impeachment purposes. People v. Davis, 412 Ill 391, 402, 107 NE2d 607, and People v. Cuttley, 82 Ill App2d 321, 226 NE2d 479. Also, see Ill Rev Stats (1967), c 38, § 155–1. Where the defendant has gone by another name, as testified to by defendant in the instant case, evidence of prior convictions under either name is admissible for the limited function of impeachment, and proof thereof need not be made beyond a reasonable doubt. People v. Buford, 396 Ill 158, 71 NE2d 340. Further, defendant did not deny that he was the person referred to in the records, nor did he offer any contradictory evidence. A presumption of identity existed, therefore, and the introduction of the records was proper. People v. Lawson, 331 Ill 380, 163 NE 149.

At the hearing on defendant's motion for a new trial, reference was made to the fact that the man called Cat-Eye, from whom defendant testified he had purchased the stolen jacket, was named Walden Smith and was on arraignment in another court. Nothing further was stated and the court was left to draw the inference that defendant was seeking a new trial on the ground of newly discovered evidence. Defendant contends that the denial of the motion was a deprivation of his right to compel the attendance of witnesses. Defendant's mention of Cat-Eye's whereabouts wholly fails to support this contention. As stated in People v. Baker, 16 Ill2d 364, at pages 373–4, 158 NE 2d 1:

> A motion for a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial judge and denial thereof will not be disturbed upon review in the absence of a showing of an abuse of discretion. (United States v. Jakalski, (7th cir) 237 F2d 503.) To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. (People v. Holtzman, 1 Ill2d 562; People v. Harrison, 359 Ill 295.)

The trial court properly denied defendant's motion for a new trial.

Defendant contends that he was not afforded adequate representation by counsel with respect to identification testimony and with respect to the motion to

suppress physical evidence which was denied by the court after a pretrial hearing. The latter contention is based on the Public Defender's failure to determine, through questioning, whether there was probable cause for defendant's arrest, which might have resulted in the suppression of the seized evidence. We do not find this argument persuasive, under the circumstances. The only evidence seized—some money—was of little probative value, certainly not critical to the State's case, and did not result in any prejudice to defendant. See People v. Washington, 81 Ill App2d 90, 225 NE2d 472.

In connection with the identification testimony of the witnesses at trial, defendant makes two arguments: First, his counsel made no motion to suppress the testimony, which failure denied defendant effective representation; and, second, his compelled appearance at the "showup" without presence of counsel requires reversal in light of United States v. Wade, 388 US 218, Gilbert v. California, 388 US 263, and Stovall v. Denno, 388 US 293.

■■■■ These issues arise in the instant proceedings because two witnesses, Gresham and Johnson, identified defendant, who was not represented by counsel, at a preindictment "showup" at the police station. The practice of "showups" has been condemned as being grossly suggestive, as stated in People v. Blumenshine, 42 Ill2d 508, 512, 250 NE2d 102:

> A showing by police of a suspect standing alone, in what is often described as a "showup", has been observed to carry with it a dangerous degree of improper suggestion.

However, if an in-court identification of defendant is made on the basis of prior observations independent of those derived from the showup, the conviction must be affirmed. People v. Blumenshine, 42 Ill2d 508, 250 NE

2d 102; People v. Cook, 113 Ill App2d 231, 252 NE2d 29. The witnesses' prolonged observation (45 minutes) of defendant at Gresham's home at the time of the crime, constitutes an origin sufficiently independent, and free from any subsequent taint of unfair identification procedure at the police station. It was therefore adequate to serve as the basis for the in-court identifications. See People v. Speck, 41 Ill2d 177, 192–193, 242 NE2d 208; People v. Nelson, 40 Ill2d 146, 151–152, 238 NE2d 378. Furthermore, it was held in People v. Palmer, 41 Ill2d 571, 572–573, 244 NE2d 173, that the lineup decisions of Wade, supra, Gilbert, supra, and Simmons v. United States, 390 US 377, "apply only to post-indictment confrontations." Accordingly, defendant's argument concerning counsel's failure to suppress the testimony is without merit, as it does not demonstrate prejudicial incompetence. See People v. Kees, 32 Ill2d 299, 205 NE2d 729, and People v. Palmer, 31 Ill2d 58, 198 NE2d 839.

██ ██ Defendant finally claims that the evidence does not establish defendant's guilt beyond a reasonable doubt. On the contrary, we believe that it does. The consideration of contradictory testimony such as that offered by defendant and Van Leonard was a matter for the trier of fact. People v. Coulson, 13 Ill2d 290, 149 NE2d 96.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and LEIGHTON, J., concur.