THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWARD LEWIS, Defendant-Appellant.

Second District No. 2—86—0386

Opinion filed January 8, 1988.

G. Joseph Weller and Michael F. Braun, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Virginia M. Ashley, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Edward Lewis, was found guilty in a jury trial of the offenses of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2) and three counts of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, pars. 12—4(a), (b)(1), (b)(10)). He was sentenced to a 15-year term of imprisonment for armed violence and concurrent five-year terms of imprisonment on each of the aggravated battery convictions.

Defendant raises numerous issues on appeal pertaining to the denial of his motion for a continuance, the preclusion of his right to present an intoxication defense, the denial of the effective assistance of counsel, trial error, and sentencing errors.

The charges against defendant arose out of defendant's stabbing of Rose Cook on October 7, 1985. The facts at trial, presented by the State, are not in dispute and can be briefly summarized. Defendant showed up, uninvited, at the house of Mr. and Mrs. Ed Cook in Waukegan, Illinois. He was an acquaintance of the Cooks' grandson, who also lived there. Defendant was asked to leave and came back in an hour and a half, stating that he left his wallet there from the previous visit and that some "guys" were after his wallet. While Ed

Cook went to look for the wallet, defendant came up behind Cook's wife, Rose, and stabbed her once in the back just underneath her right shoulder blade. It was later determined that the stab wound was 1 inch in depth and 2 inches wide.

Defendant was apprehended a short time later, after a brief chase. Defendant showed the police where he had dropped the knife, which was recovered. At the police station, defendant gave a statement in which he said that some persons were chasing him and he ran to a friend's grandparents' house. He admitted being in the house, leaving, and coming back for his coin purse, which he realized he had left there. While he was waiting for Mr. Cook to look for the purse downstairs, he heard voices telling him to stab Mrs. Cook, which he did. He thought he had stabbed her five times. He then left the home because the voices told him to leave. Defendant offered no evidence at trial.

Defendant initially contends that the trial court abused its discretion when it denied his motion for a continuance, made just before the jury trial was to commence on March 24, 1986. Defendant's appointed trial counsel, Ms. Valerie Ceckowski, an assistant public defender, requested a continuance on defendant's behalf stating that defendant wished to be represented by Mr. David Keefe, another assistant public defender. Mr. Keefe had handled the case up until a week prior to trial, when it became apparent he could not represent defendant at trial due to his attendance at a seminar. Ms. Ceckowski also stated that defendant wished a continuance because he and his father were going to retain private counsel in the near future.

The following colloquy occurred between Ms. Ceckowski, the court, defendant, and his father:

"THE COURT: How long have you been on this?

MS. CECKOWSKI: Early last week.

THE COURT: Was there any objection at that time when you took over?

MS. CECKOWSKI: He did have some hesitation. He had been dealing with Mr. Keefe. I thought we had worked that out. He has indicated to me we have not.

THE COURT: You want Mr. Keefe to represent you at trial, is that what you are saying?

THE DEFENDANT: Mr. Keefe was working on the trial and then he said that he wasn't going to be in the trial and stuff, you know; he wasn't going to be here.

THE COURT: Do you have objection to Ms. Ceckowski?

THE DEFENDANT: I feel like I wouldn't be properly rep-

resented. I don't think I would be properly represented because I think I need a proper attorney.

THE COURT: The case is called right now and this is the first time that you've said anything about a private attorney and you don't have a private attorney here with you now to indicate that he's going to represent you.

THE DEFENDANT: We got in contact with him. He said we would work out a deal and he would be able to represent me.

THE COURT: But you haven't obtained him as yet?

THE DEFENDANT: No, sir.

THE COURT: It is only if you can work out some kind of a deal, is that right?

THE DEFENDANT: Yes.

MS. CECKOWSKI: I would indicate that I did talk with Edward's father. He did indicate to me that they have been able to work something out. I know he has not been retained, but they have very high hopes of retaining him.

THE COURT: I'm always torn between wanting to make sure the defendant has an opportunity to have counsel of his own choosing if it is at all possible; on the other hand, the other side of it is a question of whether or not we have just a delaying tactic, a hope rather than a fact of getting somebody.

We can't keep on going forever. The Public Defender's Office is very well qualified and sometimes even better than some of the people from outside.

MS. CECKOWSKI: The only other thing, like I said, that Mr. Lewis indicated, I want to make sure of this on the record. He did indicate to me that he did feel more comfortable with Mr. Keefe.

THE COURT: I think we ought to proceed on.

Let me ask one question of the father. Have you made arrangements with this other attorney, Mr. Jensen?

DEFENDANT'S FATHER: Yes, sir.

THE COURT: What arrangements have you made with him?

DEFENDANT'S FATHER: Me and Mr. Jensen have made arrangements that sure, the Public Defender is well represented, but at this time, me and Mr. Keefe didn't see eye to eye.

THE COURT: What I'm saying is, have you made arrangements?

DEFENDANT'S FATHER: Yes.

THE COURT: And what arrangements are they?

DEFENDANT'S FATHER: They are financial arrangements.

THE COURT: Financial arrangements to the effect—have you paid Mr. Jensen a retainer fee?

DEFENDANT'S FATHER: No.

THE COURT: When are you going to pay that retainer fee?

DEFENDANT'S FATHER: I asked for a loan so I intend to pay that attorney's fees in about two weeks because it takes that long to process the loan. The loan is in the process, so to speak.

THE COURT: The loan can be refused. It is an iffy situation. Ms. Ceckowski is very qualified. She is not Mr. Keefe. You were upset with Mr. Keefe. Your son seems to think he likes Mr. Keefe. I think Ms. Ceckowski is well qualified. Mr. Keefe will be gone the whole week. I see no reason why we don't proceed on with the trial. We will proceed on."

We address, first, defendant's contention that the trial court abused its discretion in denying him a continuance to obtain private counsel. He argues that the refusal to allow the continuance caused a constructive denial of his right to counsel. The State responds that defendant was engaged in dilatory tactics and that private counsel was neither retained nor present in court to represent the defendant.

■ Generally, the decision of whether to grant a continuance is within the discretion of the trial court. (Ill. Rev. Stat. 1985, ch. 38, par. 114—4(e); *People v. Sanchez* (1986), 115 Ill. 2d 238, 262, 503 N.E.2d 277, 285.) The right to counsel includes the right to be represented by counsel of one's own choice (*People v. Green* (1969), 42 Ill. 2d 555, 557, 248 N.E.2d 116, 117); however, that right is not absolute (*People v. Johnson* (1982), 109 Ill. App. 3d 511, 517, 440 N.E.2d 992, 996; *People v. Spurlark* (1978), 67 Ill. App. 3d 186, 196, 384 N.E.2d 767, 774) and may not be employed as a weapon to thwart indefinitely the orderly administration of justice, or to otherwise embarrass the effective prosecution of crime (*People v. Williams* (1982), 92 Ill. 2d 109, 116, 440 N.E.2d 843, 846). In determining when a defendant's right to choose counsel unreasonably interferes with the orderly administration of justice, a court, keeping in mind the need for efficient and effective administration of justice and the defendant's right to be represented by counsel of his choice, must examine the particular facts and circumstances of each case. *People v. Spurlark* (1978), 67 Ill. App. 3d 186, 197, 384 N.E.2d 767, 774-75.

Where private counsel has been retained (*People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116), or counsel's appearance is on file (*People v. Payne* (1970), 46 Ill. 2d 585, 264 N.E.2d 167), it has been held to be an abuse of discretion to deny a continuance and to proceed to trial without the presence of defendant's chosen counsel or verifying the claim of employment of counsel. Nevertheless, where a motion for a continuance is based on a defendant's desire to retain private counsel, denial of the continuance will be a proper exercise of judicial discretion if new counsel is unidentified or does not stand ready, willing, and able to make an unconditional entry into the case. *People v. Elder* (1979), 73 Ill. App. 3d 192, 198, 391 N.E.2d 403, 408; *People v. Koss* (1977), 52 Ill. App. 3d 605, 607-08, 367 N.E.2d 1040, 1041; see also *People v. Williams* (1981), 94 Ill. App. 3d 241, 255-56, 418 N.E.2d 840, 851.

Applying these principles to the facts in this case, the trial court did not abuse its discretion in denying defendant's motion for a continuance. There is nothing in the record to indicate that defendant had secured private counsel who was unavailable at the time of trial or that defendant would be able to retain private counsel even if the continuance were granted. Defendant's father stated to the court that he was in the process of obtaining a loan in order to finance a private attorney. Although the private attorney was identified, there was no other indication, from defendant or his father, that the private attorney had been retained and was ready, willing, and able to represent defendant in this case. As the trial court noted, an application for a loan is an "iffy" situation which does not guarantee that defendant will in fact be able to retain private counsel of his choice.

Defendant was arrested on October 7, 1985, and had been represented by the public defender's office from the preliminary hearing to the date of trial on March 24, 1986. Additionally, he did not assert any request for private counsel until the day of trial. Thus, circumstances imply that defendant's request was for the purpose of delay. Although defendant has a right to counsel of his choice, such right is not absolute, and under the circumstances here, the trial court did not abuse its discretion in denying defendant's motion for a continuance based upon his last minute desire to retain private counsel.

Defendant also requested a continuance so that David Keefe, the assistant public defender assigned to the case until a week prior to trial, could handle his defense. A defendant does not have the right to choose his court-appointed counsel (*People v. Lewis* (1981), 88 Ill. 2d 129, 160, 430 N.E.2d 1346, 1361), nor may he insist on being represented by a particular member of the staff of the public defender.

(*People v. Cox* (1961), 22 Ill. 2d 534, 537, 177 N.E.2d 211, 213; *People v. Branscomb* (1969), 116 Ill. App. 2d 385, 394, 254 N.E.2d 126, 130.) Therefore, apart from defendant's separate contention of the ineffective assistance of counsel, an issue we shall address at a later point in this opinion, the trial court did not abuse its discretion in denying a continuance so that a particular assistant public defender could represent him at trial.

■ Defendant next raises two contentions regarding the trial court's ruling which precluded his purported voluntary drug intoxication defense. He maintains that the trial court prevented him from raising this defense as a sanction for failing to disclose the defense to the State pursuant to a discovery request, and, as such, the court's action constituted a denial of his right to a fair trial and due process. Alternatively, he claims that the court abused its discretion by preventing him from raising a voluntary intoxication defense.

The record discloses that during a recess in *voir dire* of the jurors, counsel for defendant first indicated to the court defendant's desire to raise as a defense that he was on drugs at the time of the occurrence. Counsel indicated that defendant had just informed her of this defense during the recess, that she realized this defense had not previously been tendered to the prosecution in response to its discovery motion, and that she had no witnesses to this defense except possibly the defendant and an unnamed person who defendant said saw him in a drugged state. Counsel moved for the opportunity to present this defense or, alternatively, for a mistrial. Defendant interposed that he had told his prior attorney, David Keefe, about his drug use and that Keefe had written it down and had him examined. Defendant also told the court that the drug evaluation stated he needed long-term treatment, but said nothing about a drug problem. The court stated there was not enough to warrant a mistrial or permit a drug defense and granted the State's oral motion *in limine* to preclude testimony as to his drug use at the time of the offense.

Supreme Court Rule 413(d) provides:

> "Defenses. Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the State, defense counsel shall inform the State of any defenses which he intends to make at a hearing or trial ***." (107 Ill. 2d R. 413(d).)

Supreme Court Rule 415(g)(i) provides:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule *** the court may or-

der such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." 107 Ill. 2d R. 415(g)(i).

The legislative comments pertaining to subsection (g) state, in pertinent part, that "[i]f justified under the circumstances, the court may exclude evidence which a party has failed to disclose under applicable discovery rules. The Committee felt that such a device is a useful sanction, and that even though some problems may arise in applying it against the accused, the sanction can be applied in some situations." Ill. Ann. Stat., ch. 110A, par. 415(g), Committee Comments, at 690 (Smith-Hurd 1985); see, *e.g.*, *People v. Spicer* (1987), 158 Ill. App. 3d 699, 511 N.E.2d 235 (upholding exclusion of evidence as a sanction, finding that nothing in the sixth amendment entitles a defendant, as a matter of constitutional right, to wait until the State's case in chief is in progress before announcing the nature of a defense that he was aware of yet on which he failed to comply with discovery); *People v. Taylor* (1986), 141 Ill. App. 3d 839, 491 N.E.2d 3, *cert. granted* (1987), 479 U.S. 1063, 93 L. Ed. 2d 996, 107 S. Ct. 947 (exclusion of defense witness proper under Rule 415(g)(i) where defense counsel subpoenaed witness but failed to list him pursuant to discovery request).

Appellate court decisions have held that a trial court's decision to exclude evidence pursuant to Supreme Court Rule 415(g) (107 Ill. 2d R. 415(g)) rests within the discretion of the trial court and will not be disturbed absent a showing of prejudice or surprise. (*People v. Spicer* (1987), 158 Ill. App. 3d 699, 702, 511 N.E.2d 235, 238; *People v. Carr* (1986), 149 Ill. App. 3d 918, 929, 501 N.E.2d 241, 248.) Even though the sanctions of Rule 415(g) are designed to accomplish the purpose of discovery, when the sanction is the exclusion of a defense witness, it must be applied only in the most extreme situations and be closely scrutinized. (*People v. Echols* (1986), 146 Ill. App. 3d 965, 972, 497 N.E.2d 321, 326; *People v. Foster* (1986), 145 Ill. App. 3d 477, 480, 495 N.E.2d 1141, 1142.) Moreover, the exclusion of evidence should not encroach upon a defendant's sixth amendment right to a fair trial. *People v. Rayford* (1976), 43 Ill. App. 3d 283, 286, 356 N.E.2d 1274, 1277; see *Spicer*, 158 Ill. App. 3d at 702, 511 N.E.2d at 238; *People v. Milton* (1979), 72 Ill. App. 3d 1042, 1051, 390 N.E.2d 1306, 1313.

In the case at bar, defendant was precluded from presenting evidence that he was "on drugs" at the time of the offense as a sanction for failing to disclose this defense under a pretrial discovery order. The record discloses that during *voir dire* defendant first told his

trial counsel, Assistant Public Defender Ceckowski, that he wanted to raise as a defense that he was on drugs at the time of the offense. Defendant admitted, however, that he had told this to his previous attorney, Assistant Public Defender Keefe, who then had him evaluated. Defendant further acknowledged that the psychologist said that defendant needed long-term treatment, but stated nothing about drugs. It is apparent that attorney Keefe considered this potential defense, but concluded there was insufficient evidence to support such a defense.

On this record, it appears that this nondisclosed defense was considered and rejected by defendant's previous counsel and there was no evidence, other than defendant's own testimony and perhaps an unnamed witness, to support the defense. Thus, even were defendant to testify to his use of drugs at the time of the offense, considering the evidence in the case, any error in precluding a drug defense was harmless error.

■ Voluntary alcohol or drug intoxication is no defense to criminal conduct unless the intoxication is so extreme as to make impossible the existence of a mental state which is an element of the crime. (Ill. Rev. Stat. 1985, ch. 38, par. 6—3; *People v. Madej* (1985), 106 Ill. 2d 201, 216, 478 N.E.2d 392, 398.) A defendant's ability to recount in detail his actions and give detailed descriptions of the events surrounding the crime indicates that he acted knowingly and purposefully. (*Madej*, 106 Ill. 2d at 216-17, 478 N.E.2d at 398-99; *People v. Weir* (1986), 111 Ill. 2d 334, 340, 490 N.E.2d 1, 3-4.) The record here shows that when defendant was arrested shortly after the commission of the offense, he voluntarily showed the police where he threw the knife used in the attack and that he later revealed in detail his two visits to the victim's home and the stabbing of Mrs. Cook, which he attributed to voices telling him to do so. He did not indicate any use of drugs. The victim's husband testified to two brief conversations with the defendant.

Based on the particular circumstances of this case, any error in precluding defendant from testifying that he was "on drugs" was harmless. (See, *e.g., People v. Echols* (1986), 146 Ill. App. 3d 965, 972-73, 497 N.E.2d 321, 326-27 (trial court's exclusion of defense witness found to be harmless error).) Errors, even constitutional errors, which are harmless beyond a reasonable doubt do not require reversal. See *People v. R.C.* (1985), 108 Ill. 2d 349, 355, 483 N.E.2d 1241, 1244.

■ Defendant also maintains that he was denied the effective assistance of counsel because of his trial counsel's lack of preparation in becoming aware of his intoxication defense, and the failure to point

out an inconsistency between testimony at a preliminary hearing and at trial. He characterizes his trial counsel's representation as so lacking as to deprive him of a meaningful adversarial testing, constituting a denial of his sixth amendment rights, thereby making the adversary process, itself, presumptively unreliable. (See *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039; *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513.) Alternatively, he argues that there was a denial of his effective assistance of counsel right under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

*People v. Weir* (1986), 111 Ill. 2d 334, 490 N.E.2d 1, establishes the appropriate standard to analyze the alleged errors of trial counsel in this case. In *Weir*, our supreme court held that only in a narrow range of cases will a defendant be able to demonstrate ineffective assistance of counsel without a showing of actual prejudice resulting from counsel's deficient performance. (111 Ill. 2d at 337, 490 N.E.2d at 2.) For example, where defense counsel agrees to defendant's guilt, so that the trial becomes a mere formality, a presumption of prejudice will be found. (111 Ill. 2d at 338, 490 N.E.2d at 2.) The *Weir* court declined to presume that the defendant was necessarily prejudiced, even though defense counsel had erroneously believed that voluntary intoxication could not be raised as a defense in that case. 111 Ill. 2d at 338, 490 N.E.2d at 3.

Without this presumption, a defendant must establish actual prejudice resulting from the alleged deficiencies of trial counsel. (*Weir*, 111 Ill. 2d at 338, 490 N.E.2d at 2.) To establish actual prejudice, a defendant must show that there is a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. (*Weir*, 111 Ill. 2d at 338, 490 N.E.2d at 3.) Moreover, a failure to demonstrate prejudice resulting from alleged deficiencies in counsel's performance will defeat a defendant's claim of ineffective assistance of counsel. See *People v. Albanese* (1984), 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256.

In this case, there is no reasonable probability that the outcome of the trial would have been different had the intoxication defense been raised. There was no offer of proof beyond defendant's own statements of his drug use to support the defense theory. Although a psychological evaluation had been performed, there is nothing to indicate that the report would support such a defense. Moreover, upon questioning by the trial court, defendant indicated that the report reflected nothing about drug problems.

■ Also, during the sentencing hearing, the trial court indicated

that it did not consider defendant's alleged ingestion of a hallucinogen prior to the incident to be a valid defense. (See *People v. Weir* (1986), 111 Ill. 2d 334, 339-40, 490 N.E.2d 1, 3.) The trial court emphasized the evidence which refuted a voluntary intoxication defense, such as defendant's knowledge during the incident, his efforts to conceal the knife, and his attempted escape. (See *Weir*, 111 Ill. 2d at 340, 490 N.E.2d at 3-4; *People v. Crosser* (1983), 117 Ill. App. 3d 24, 28, 452 N.E.2d 857, 861-62.) Under the facts of this case, defense counsel's failure to raise an intoxication defense, whether deficient or not, was not prejudicial and, therefore, defendant's claim of ineffective assistance of counsel fails.

 Likewise, defense counsel's failure to point out a minor inconsistency between Officer Motley's preliminary hearing testimony and Officer Meadie's trial testimony as to where defendant obtained the knife is not so prejudicial as to effect the outcome of the trial. Officer Motley testified at the preliminary hearing that the victim told him that she saw defendant remove the knife from a rack in her kitchen. At trial, Officer Meadie testified that defendant told him that he obtained the knife from his girlfriend's house. Considering the overwhelming evidence of defendant's involvement in the crime, a failure to note a discrepancy as to where defendant obtained the weapon used in the attack is unlikely to have affected the outcome of the trial.

 Defendant further maintains that the trial court erred in failing, *sua sponte*, to appoint substitute counsel to assist him in arguing claims of ineffective assistance of his trial counsel which he made in one of several letters to the court after his trial. He requests that his case be remanded for a new hearing on his post-trial motion at which counsel, other than a member of the public defender's staff, be appointed to represent him. In a letter filed with the court on April 9, 1986, defendant generally claimed that he was not "properly defended" by either attorney Keefe, who represented him up until a week prior to trial, or attorney Ceckowski, who represented him at trial. Also, defendant specifically wrote that Keefe did not believe he was insane at the time of the occurrence and failed to pursue a drug or alcohol intoxication defense. Further, he accused attorney Ceckowski of not "fighting" certain evidence or questioning the witnesses, and of only being on the case for one week.

A written motion for a new trial was filed on April 18, 1986, by attorney Ceckowski on defendant's behalf. The motion did not contain any allegation of ineffective assistance of counsel. The motion was heard and denied by the trial court. Defendant was present and noth-

ing was said about his letters or the claim of ineffective assistance of counsel by him, the court, or either counsel during the hearing on the motion and a subsequent sentencing hearing.

Defendant principally relies on *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, in support of his argument. In *Krankel*, defendant filed a *pro se* motion for a new trial adding an issue of ineffective assistance of his trial counsel and was apparently denied new counsel to assist him in the motion. The supreme court, based on the recommendation of the State and defendant on appeal, remanded the case for a new hearing on the defendant's motion for a new trial with defendant being represented by appointed counsel other than his trial counsel. 102 Ill. 2d at 189, 464 N.E.2d at 1049.

The case at bar is quite dissimilar from *Krankel*. Here, defendant made no request for new counsel in his letter to the court or at any of the post-trial proceedings. Other than in his letter to the court, defendant did not, at any time, claim the incompetence of his trial attorneys. It would also appear, from the record, that the trial judge, defendant's counsel, and the State were all unaware of defendant's letter as no mention was made of it, and defendant did not himself refer to it in the post-trial proceedings. (*Cf. People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466 (trial judge brought defendant's letter complaining of the ineffective assistance of counsel to the attention of the attorneys immediately prior to the post-trial hearing).) Thus, defendant did not pursue the matter contained in his letter and, in these circumstances, waived any issue in this regard on appeal.

While the trial judge may, in some instances, have a responsibility to act on letters mailed by a defendant to the court, here, defendant subsequently appeared in court with counsel and could have properly presented any matter to the court. Defendant's letter, then, cannot be regarded as a motion or a request for substitute counsel.

Defendant next claims that trial error occurred when one of the investigating officers testified that, after being told defendant's name by the victim and her husband, he looked for defendant, whom he had "known of" for two years. Defendant argues that the officer's reference that he had "known of" defendant for two years improperly suggested his prior criminal record or past bad conduct, thereby depriving him of a fair trial.

We note that defendant failed to object at trial or raise the issue in his written post-trial motion, thereby waiving the issue for appellate review. (*People v. Wright* (1985), 111 Ill. 2d 128, 154, 490 N.E.2d 640, 650.) This court may, however, review the issue under the "plain error" exception (107 Ill. 2d R. 615(a)), if there is a substantial error

denying a fair trial or if the evidence is closely balanced. *People v. Friesland* (1985), 109 Ill. 2d 369, 375, 488 N.E.2d 261, 263.

■■ Recent decisions of our supreme court in *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, and *People v. Stover* (1982), 89 Ill. 2d 189, 432 N.E.2d 262, have cautioned against the prosecutor's use of evidence that the police were previously acquainted with the defendant unless such evidence is shown to be relevant to an issue in the case. (See *Bryant*, 113 Ill. 2d at 514, 499 N.E.2d at 421.) Here, the officer was testifying to the circumstances surrounding his locating and apprehending defendant shortly after the commission of the crime after the victim and her husband had given him defendant's name. The officer's knowledge of defendant appears to be relevant under these circumstances. Additionally, no further reference was made of this acquaintanceship during the trial or final arguments. Even assuming any error, the evidence was neither closely balanced nor the error so substantial as to invoke the "plain error" exception to the waiver rule.

■■ Defendant next raises three contentions of error in the sentencing proceedings. First, he maintains that the judgment and sentence for the three aggravated battery offenses must be vacated, as these convictions and the armed violence conviction all arose from one physical act. (See *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44.) The State correctly concedes this argument, and we, therefore, vacate the convictions for aggravated battery.

Second, defendant contends that it was error to allow the assistant State's Attorney to read a signed victim impact statement at the sentencing hearing when the victim was not present in court. Defendant cites section 6 of the "Bill of Rights for Victims and Witnesses of Violent Crime Act," which provides, in pertinent part:

> "Sec. 6. Rights to present victim impact statement. In any case where a defendant has been convicted of a violent crime or a juvenile has been adjudicated a delinquent for any offense *** and a victim of the violent crime is present in the courtroom at the time of the sentencing or the disposition hearing, the victim upon his or her request shall have the right to address the court regarding the impact which the defendant's criminal conduct or the juvenile's delinquent conduct has had upon the victim. If the victim chooses to exercise this right, the impact statement must have been prepared in writing in conjunction with the Office of the State's Attorney prior to the initial hearing or sentencing, before it can be presented orally at the sentencing hearing. The court shall consider any statements

made by the victim, along with all other appropriate factors in determining the sentence of the defendant or disposition of such juvenile." Ill. Rev. Stat. 1985, ch. 38, par. 1406.

The record discloses that defendant failed to object to the reading of the victim impact statement in the trial court. A defendant must object to the admissibility of evidence introduced at a sentencing hearing; otherwise, the right to raise the issue on appeal is waived. (*People v. Perez* (1985), 108 Ill. 2d 70, 87, 483 N.E.2d 250, 258; *People v. Meeks* (1980), 81 Ill. 2d 524, 533, 411 N.E.2d 9, 14.) Thus, by failing to object below, defendant has waived the right to raise that issue on appeal.

■■■ Third, defendant contends that the 15-year sentence of imprisonment is excessive and should be reduced because the trial court did not adequately consider his background as set out in the presentence report and acknowledged need for mental health treatment.

The trial court is best suited to consider the various factors in fashioning a sentence, and the reviewing court should not substitute its own judgment for that of the trial court absent an abuse of discretion. (*People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300, 1307.) From our examination of the record it is evident that the trial judge read and considered the presentence report and the attached mental health report and weighed the seriousness of the crime with defendant's rehabilitative potential and background. The crime defendant was convicted of is a serious one. The mental health evaluation reveals that he has a background of anger, anxiety, fear, and impulsive behavior under stress. It was recommended that he receive long-term psychiatric treatment. We are unable to find that the trial court abused its sentencing discretion by imposing a 15-year term of imprisonment.

Affirmed in part, vacated in part.

WOODWARD and UNVERZAGT, JJ., concur.