2020 IL App (1st) 182557-U

No. 1-18-2557

Order filed December 29, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 16518 |
| | ) | |
| RANDY MORGAN, | ) | Honorable |
| | ) | Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for aggravated discharge of a firearm is affirmed over his challenge to the sufficiency of the evidence he knowingly discharged a firearm in the direction of another, and his claim the trial court conducted no inquiry regarding his *pro se* posttrial motion alleging ineffective assistance of counsel, in violation of *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 2    Following a bench trial, defendant Randy Morgan was found guilty of one count of aggravated discharge of a firearm and sentenced to eight years' imprisonment. On appeal, defendant contends the State failed to prove his guilt beyond a reasonable doubt where the

evidence did not establish he knowingly discharged a firearm in the direction of another. Defendant also argues the trial court erroneously failed to conduct an inquiry into his *pro se* posttrial allegation of ineffective assistance of counsel. We affirm.

¶ 3    Defendant was charged with one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2016)), which alleged he knowingly discharged a firearm in the direction of Nwakanwa Ebelechukwu. One count of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2016)) alleged defendant, in committing a battery, knowingly discharged a firearm and caused injury to another when he shot Ebelechukwu about the body.

¶ 4    Defendant filed two *pro se* pretrial motions to quash arrest and suppress evidence, which argued his arrest was unlawful because he was arrested without probable cause or a warrant. Defendant orally requested the court hear his motions, but then withdrew them.

¶ 5    At trial, Nwakanwa Ebelechukwu testified he went to the home of a handyman named Rene Gunther, where he had left his car for repairs, to pick up the car at approximately 10:45 a.m. on September 4, 2017. Ebelechukwu met Gunther in a garage behind his house and became "furious" when he learned Gunther had performed no work on the car, and had dismantled the dashboard. As Ebelechukwu argued with Gunther, defendant, whom Ebelechukwu identified in court, arrived and said "with a threatening voice" that Ebelechukwu had to pay Gunther. Ebelechukwu refused and said defendant "had no business being in [the] discussion," and defendant walked away.

¶ 6    Approximately 10 minutes later, defendant returned in a car. He exited the car, and Ebelechukwu saw a gun in his hand. Defendant walked toward Ebelechukwu and said he was going to "blow [Ebelechukwu's] brains out." Defendant, who was approximately five feet away from Ebelechukwu, aimed the gun at Ebelechukwu's foot and pulled the trigger, but the gun did

not fire. Defendant cocked the gun, "clicked it again," and "there was a gush of air that hit [Ebelechukwu] and then a loud sound" or a "boom." Ebelechukwu described the gun defendant used as "an all black pistol" that "wasn't a revolver," and that was "between a .22 and a .9" caliber.

¶ 7    Defendant got into his car and drove away. Ebelechukwu said to Gunther, "Rene, this guy shot me." Ebelechukwu used his cell phone to take photographs of defendant's car as it was pulling away. These photographs, which were entered into evidence, depict the front of a light blue car in an alley, facing toward the rear of a silver car.

¶ 8    Ebelechukwu believed he had been shot at, but did not realize a bullet had struck him, and did not see or feel any injuries. He called police, who arrived 20 to 30 minutes later. Ebelechukwu did not see police recover any evidence at the scene. He returned home at approximately 11:30 a.m. and noticed his shoe was wet. Upon removing his shoe, he saw "blood gushing out" of his "left toe," so he went to the hospital, where he received medical treatment. Ebelechukwu identified his shoe in court; it had holes in the top and bottom and a blood stain on it. His shoe was entered into evidence.

¶ 9    Ebelechukwu identified defendant in a photo array as the person who shot him. On the photo array, which was entered into evidence, Ebelechukwu wrote, "He shot me at my leg."

¶ 10    On cross-examination, Ebelechukwu testified that, on the day of the incident, he told police defendant shot him. However, he did not tell police defendant said he was going to "blow [Ebelechukwu's] brains out" until approximately a month after the incident. Approximately 45 to 60 minutes passed before Ebelechukwu realized he was injured.

¶ 11    The parties stipulated Dr. Suzanne Warsman examined X-rays of Ebelechukwu's left foot. He suffered a gunshot wound to his third toe, which caused the bone of that toe to fracture into two pieces.

¶ 12    The State moved into evidence certified Secretary of State records pertaining to defendant's vehicle. These records indicate the license plate of the vehicle depicted in the photographs Ebelechukwu took was registered to defendant.

¶ 13    Defendant moved for a directed finding, which the court granted with respect to the aggravated battery count.

¶ 14    Rene Gunther testified he and Ebelechukwu got into an argument about Ebelechukwu's car on Spetemebr 4, 2017. Defendant, whom Gunther identified in court, arrived and "maybe" said to Ebelechukwu he "should pay that man." Ebelechukwu pushed defendant "down the alley" "with all his weight." Gunther was in his garage, approximately 21 feet away from Ebelechukwu and defendant, when this occurred. He did not hear a gunshot and did not hear anything that sounded like the slide of a gun. He saw both defendant and Ebelechukwu leaving.

¶ 15    Approximately 45 minutes later, Gunther received a telephone call from Ebelechukwu. Gunther went to the front of his house and saw Ebelechukwu with two police officers. An officer asked Gunther if he heard gunshots "or did somebody shoot," and he said no. Gunther did not see any blood or bullets on his property.

¶ 16    On cross-examination, Gunther testified he did not see Ebelechukwu and defendant touch each other and did not know what happened between them as he was busy working.

¶ 17    In closing, defendant noted the "lack of forensic evidence" such as blood, bullet casings, or a gun supporting Ebelechukwu's claim that defendant shot him. In response, the State attacked

Gunther's credibility and argued Ebelechukwu's testimony supported a finding defendant fired the gun at him.

¶ 18    The court found defendant guilty of aggravated discharge of a firearm. In announcing its ruling, the court found Ebelechukwu credible, and that Gunther "suffered a major credibility lapses [*sic*]." The court explained it acquitted defendant of the aggravated battery count because it found the State had not proved great bodily harm because "[t]he causal link has been disrupted by the delay and outcry regarding that injury."

¶ 19    Following the court's guilty finding, defendant drafted a *pro se* motion for new trial, which argued in relevant part "[t]here were no pretrial Motions Filed in [his] behalf. Ineffective assistance of counsel." The motion was stamped "filed" by the clerk's office on October 15, 2018. A clerk's office form records defendant's name, the case number, the trial judge, the date of receipt ("10-15-18"), and date to be heard ("11-5-18"). A box on the form for "Other Motion" was checked, with a handwritten notation stating "for new trial." Defendant also wrote a letter dated "10-3-18," which requests that his motion be filed and sent to the trial court judge, although the letter does not state to whom it is addressed, and there is no indication as to whether it was delivered to anyone.

¶ 20    On October 18, 2018, trial counsel filed a motion for a new trial that did not make any allegations of ineffective assistance. At a hearing on November 5, 2018, trial counsel only argued the motion he had filed on October 18, and did not raise any claims of ineffective assistance. Neither defendant, the trial court, defense counsel, nor the State made any reference to defendant's *pro se* motion for new trial alleging ineffective assistance. The trial court denied counsel's motion

and proceeded to sentencing. When the court asked defendant if he wanted to say anything in allocution, defendant said, "You are sending an honest man to prison. That is all I have to say."

¶ 21    The court sentenced defendant to eight years' imprisonment. Defendant filed a motion to reconsider sentence, which was denied.

¶ 22    On appeal, defendant first challenges his conviction for aggravated discharge of a firearm. Specifically, he argues the evidence did not establish beyond a reasonable doubt that he knowingly discharged a firearm in the direction of another.

¶ 23    When, as here, a defendant challenges the sufficiency of the evidence, we review " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Davidson*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We draw all reasonable inferences in favor of the State (*Davidson*, 233 Ill. 2d at 43), and we do not retry defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt." *People v. Givens*, 237 Ill. 2d 311, 334 (2010).

¶ 24    To prove defendant guilty of aggravated discharge of a fiream as charged, the State had to establish he knowingly discharged a firearm in the direction of another person. See 720 ILCS 5/24-1.2(a)(2) (West 2016).

¶ 25    We find the evidence established beyond a reasonable doubt defendant knowingly discharged a firearm in the direction of another. Ebelechukwu testified he saw defendant holding a black handgun as he exited his car. Defendant pointed the gun at Ebelechukwu's foot and pulled the trigger twice from approximately five feet away. The second time defendant pulled the trigger,

Ebelechukwu felt a "gush" of air and heard a "boom." A reasonable factfinder could infer defendant pulled the trigger twice because he wanted to shoot at Ebelechukwu, and the gun did not discharge the first time. Thus, defendant acted knowingly. This conclusion is further supported by defendant saying he was going to "blow [Ebelechukwu's] brains out" shortly before firing the gun, which a reasonable trier of fact could find to be evidence of defendant's mental state.

¶ 26     There is no dispute Ebelechukwu suffered a gunshot would to his left third toe on the day of this incident. Dr. Warsman's stipulated testimony established as much, along with Ebelechukwu's damaged and bloody shoe. From this evidence, a reasonable factfinder could conclude defendant shot Ebelechukwu in the foot and, therefore, that he discharged a firearm in Ebelechukwu's direction. Thus, the evidence was sufficient to support a reasonable conclusion defendant committed aggravated discharge of a firearm in the direction of another.

¶ 27     Defendant primarily contends Ebelechukwu's testimony about this incident was not credible. However, the trial court found him to be credible, a finding we cannot disturb on appeal. See *Sutherland*, 223 Ill. 2d at 242. Defendant also points to the lack of "physical evidence corroborating Ebelechukw[u]'s testimony that [defendant] discharged a firearm." However, physical evidence is not necessary to support defendant's conviction where the trial court found Ebelechukwu's testimony credible. See *People v. Daheya*, 2013 IL App (1st) 122333, ¶ 76. His testimony alone is sufficient to support the trial court's finding of guilt. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 28     The cases defendant cites are distinguishable. See, e.g., *People v. Hartfield*, 266 Ill. App. 3d 607, 608 (1994) (victim did not see the defendant fire a gun); *People v. Charleston*, 278 Ill. App. 3d 392, 398 (1996) (no evidence of which direction the defendant fired gun). Defendant's

arguments do not warrant reversal of his conviction. Accordingly, we affirm defendant's conviction for aggravated discharge of a firearm.

¶ 29     Defendant next contends the trial court erred by failing to conduct a preliminary inquiry into his *pro se* posttrial claims of ineffective assistance of counsel, as required by *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 30     Under *Krankel*, a defendant who raises *pro se* posttrial claims of ineffective assistance of counsel is entitled to have those claims heard by the circuit court. *People v. Horman*, 2018 IL App (3d) 160423, ¶ 24. Addressing *pro se* claims of ineffective assistance involves two steps: "(1) the circuit court makes a preliminary inquiry to examine the factual basis of the defendant's claim and (2) if the allegations show 'possible neglect of the case,' new counsel is appointed to represent the defendant in a full hearing on his *pro se* claims." *Id.* (quoting *People v. Moore*, 207 Ill. 2d 68, 78 (2003)). The trial court can conduct the initial inquiry in one of three ways: (1) asking counsel about the facts and circumstances related to the defendant's allegations; (2) having a brief discussion with the defendant; or (3) relying on the court's own knowledge of counsel's performance at trial and the insufficiency of the defendant's allegations on their face. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 22.

¶ 31     In order to trigger a preliminary inquiry, " 'a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention.' " *People v. Ayres*, 2017 IL 120071, ¶ 11 (quoting *Moore*, 207 Ill. 2d at 79). However, a *pro se* complaint of ineffective assistance must be more than "bald, ambiguous, and/or unsupported by specific facts." *People v. Ward*, 371 Ill. App. 3d 382, 432 (2007). " 'The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective

assistance of counsel.' " *Ayres*, 2017 IL 120071, ¶ 13 (quoting *Moore*, 207 Ill. 2d at 78). We review whether a trial court properly conducted a *Krankel* inquiry *de novo*. *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 32    We find the trial court was not required to conduct a *Krankel* inquiry because defendant failed to sufficiently bring his *pro se* posttrial claim of ineffective assistance of counsel to the court's attention. Although defendant filed a *pro se* motion alleging ineffective assistance with the clerk of the circuit court, there is no indication in the record that the trial court, the State, or defense counsel were aware of the existence of that motion.

¶ 33    When defendant appeared in court for the hearing on posttrial motions and sentencing, he did not bring his *pro se* motion or claim of ineffective assistance to the court's attention. The trial court did not mention defendant's *pro* se motion and trial counsel argued counsel's motion, which did not include ineffective assistance claims; defendant said nothing. Then, when offered an opportunity to speak at the sentencing hearing, defendant said, "[A]ll I have to say" is "[y]ou are sending an innocent man to prison." It was defendant's duty to bring his *pro se* posttrial claim of ineffective assistance to the trial court's attention. See *People v. Patrick*, 2011 IL 111666, ¶ 29 (although a defendant need not file a written motion, he must bring an ineffective assistance claim to the court's attention). Defendant neglected to fulfill that duty, so the trial court had no duty to conduct a *Krankel* inquiry into a claim of which it was unaware. This conclusion is consistent with prior cases in which we have found a trial court is not required to conduct a *Krankel* inquiry when it is unaware of a defendant's written *pro se* claim of ineffective assistance and the defendant does not bring that claim to the court's attention in posttrial proceedings. See, e.g., *People v. Zirko*,

2012 IL App (1st) 092158, ¶ 72; *People v. Allen*, 409 Ill. App. 3d 1058, 1077 (2011); *People v. Lewis*, 165 Ill. App. 3d 97, 109 (1988).

¶ 34    We recognize *Zirko*, *Allen*, and *Lewis* predate *Ayres*, as defendant's reply brief notes. However, *Ayres* is distinguishable. In that case, the defendant submitted via mail a *pro se* motion alleging ineffective assistance of counsel, which the court did not consider or reference at a hearing on other posttrial motions filed by counsel. *Ayres*, 2017 IL 120071, ¶ 6. However, the "[d]efendant was not present at the posttrial hearing and, therefore, was unable to ask the court to rule on his petition." *Id.*, ¶ 24. Our supreme court held the defendant's *pro se* motion alleging ineffective assistance was sufficient to trigger a *Krankel* inquiry. *Id.*, ¶¶ 24-26.

¶ 35    As in *Ayres*, here, defendant submitted a *pro se* posttrial motion alleging ineffective assistance of counsel, which the court did not consider or reference at the hearing on posttrial motions and sentencing. In both cases, it is unclear whether the trial court actually received the defendants' *pro se* motions. But unlike *Ayres*, in this case, defendant *was* present at the hearing on posttrial motions. He knew the court was addressing posttrial motions, but did not raise the one he filed, and did not reference that motion or his claim of ineffective assistance when the court asked if he had anything to say. Thus, this case is more similar to *Zirko* than *Ayres*. See *Zirko*, 2012 IL App (1st) 092158, ¶ 72 (no evidence trial court knew of the defendant's *pro se* motion alleging ineffective assistance, but the defendant "never informed the court during a lengthy hearing which presented an opportunity to be heard," so court had no duty to conduct *Krankel* inquiry). Under *Zirko*, we cannot say the trial court was required to conduct a *Krankel* inquiry.

¶ 36    Defendant argues he did all that was required to trigger a *Krankel* inquiry by filing a *pro se* posttrial motion alleging ineffective assistance. However, the mere filing of a motion with the

clerk may not have been enough to put that motion before the court. See *People v. Shines*, 2015 IL App (1st) 121070, ¶ 30. Defendant was present at the hearing on posttrial motions and made no effort to raise his *pro se* posttrial motion alleging ineffective assistance.[1] We cannot find the trial court had an obligation to consider that motion when defendant did not bring it to the court's attention when he had the opportunity to do so. See *People v. Rucker*, 346 Ill. App. 3d 873, 883-85 (2003) (abrogated on other grounds by *Ayres*, 2017 IL 120071). Accordingly, we find the trial court did not err; thus, remand for a *Krankel* inquiry is not warranted.

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.

---

[1] The procedural history of defendant's *pro se* pretrial motions to quash arrest and suppress evidence suggests defendant was aware he could raise *pro se* motions orally in court. Defendant asked that the court hear his *pro se* pretrial motions, then orally withdrew them.